*Fairfield,*
July, 1848.

Winton
*v.*
Barnum.

---

HURD and another *against* BLACKMAN and another :

### IN ERROR.

In this state, a receipt in full will operate, like a discharge, to defeat any further claim by the party giving it, unless it is given under such circumstances

of mistake, accident or surprise, or is procured by such fraud, as will author-ize a court of equity to set it aside.

Therefore, where *A* and *B*, between whom there had been mutual dealings, came together, for the purpose of settling all their accounts, which were ex-amined, and a balance ascertained, in favour of *B*, for which *A* gave *B* a draft, which was duly paid, and *B*, at the same time gave *A* a writing, whereby he acknowledged the receipt of payment in full, of *A's* account; *A* having previously given *B* a note for 100 dollars, which had not then come to maturity, it was adverted to, by both parties, and the amount deducted from *B's* claim against *A*; in this transaction, neither of the parties acted under any mistake, or with a fraudulent intent; in an action, afterwards brought by *B* against *A*, for the balance of the original account, it was held, that the receipt so given by *B*, was an effectual defence.

THIS was an action of book debt, brought originally by *Blackman & Betts*, against *Hurd & Hoyt*. On a motion for that purpose, *Eliphalet Swift*, Esq., was appointed sole auditor, to audit and adjust the accounts between the parties, and to make his award thereon. He found and reported the following facts.

Most of the several items charged in the plaintiff's account were admitted by the defendants; but they claimed, to have made payment in full. The defendants had been partners in business, and their partnership was dissolved, on the 22nd of *April* 1844. At that time, the partnership was indebted to the plaintiffs, on book, about 150 dollars. *Hoyt* was also indebted to the plaintiffs on book, on his individual account, in the sum of 88 dollars, 46 cents. *Hurd* was also indebted on book to the plaintiffs, on his individual account, about 200 dollars. *Hurd* took the company property; and it was agreed between *Hurd* and *Hoyt*, that *Hurd* should pay the debts of the company, and should also pay *Hoyt's* individual debt to the plaintiffs. The dissolution was soon made known to the plaintiffs, and *Hurd* agreed with them, to pay them 100 dollars, every three months, until the whole of said debts were paid, and to give his notes, from time to time, to that effect, to be applied, when paid; but there was no agree-ment, as to which particular account should be first paid. On the 28th of *June*, 1844, *Hurd* paid the plaintiffs 100 dol-lars, giving no directions as to which of said accounts the money should be applied upon; but the plaintiffs applied it to the partnership account. On the 28th of *September* 1844, *Hurd* gave the plaintiffs his note for 100 dollars, payable in three months, in pursuance of said agreement. On the 7th

of *October* 1844, *Hoyt* called upon the plaintiffs to settle all his liabilities; which consisted of his individual book account, and that of *Hurd & Hoyt.* The accounts were then examined, by the parties; and the sum which they then found due, and which was then in fact due from *Hoyt* alone, and from *Hurd & Hoyt,* was 144 dollars, 96 cents. *Betts,* one of the plaintiffs, and also *Hoyt,* mentioned the note which *Hurd* had given to the plaintiffs for 100 dollars, then not paid nor matured; and *Hoyt* claimed, that it should be deducted from the account. To this *Betts* assented, and deducted it; and thereupon, *Hoyt* gave the plaintiffs a draft upon *Hurd & Hoyt,* at thirty days sight, for the sum of 44 dollars, 96 cents—the balance of the account, after deducting said note. *Hoyt* then drew a receipt, of the following tenor: "Received, *Norwalk, Oct.* 7th 1844, by draft on *Hurd & Hoyt,* at 30 days sight, for 44 dollars, 96 cents, payment in full of *E. C. Hoyt* and *Hurd & Hoyt's* account." *Betts* objected to the signing of it, on the ground that it would, or might, prevent the plaintiffs from collecting said note. *Hoyt* said, it would make no difference: there would be no trouble about it. *Betts* then signed the company name of the plaintiffs, to the receipt, received said draft and delivered said receipt to *Hoyt.* A part of the book account of the plaintiffs against *Hurd & Hoyt,* was included in said note, and the whole of their private account against *Hoyt.* The draft was paid at maturity, and applied, by the plaintiffs, to their account against *Hurd & Hoyt.* No part of the note given by *Hurd* to the plaintiffs has been paid, but it remains overdue in the hands of the plaintiffs. At the time the receipt was given, the defendants were both in good credit. At the time *Hurd's* note fell due, he had failed in business, and was unable to pay it; and afterwards, *Hoyt* also became insolvent. In this transaction, none of the parties acted under any mistake, or with a fraudulent intent, in giving or obtaining said receipt.

The defendants insisted, that, on these facts, the plaintiffs' account against them had been paid, and they could not recover in this action; and if the court should be of that opinion, then, the auditor found, that the defendants owed the plaintiffs nothing. The plaintiffs, on the other hand, insisted, that upon these facts, their account had not been paid, and

*Fairfield,*
July, 1848.

Hurd
*v.*
Blackman.

that they were entitled to recover; and if such should be the opinion of the court, then the auditor found a balance of 13 dollars, 26 cents, due to the plaintiffs.

The court accepted the auditor's report, rendered judgment in favour of the plaintiffs, to recover of the defendants, said sum of 13 dollars, 26 cents, debt, and their costs. To revise this judgment, the defendants brought the record before this court, by motion in error.

*E. Taylor* and *White,* for the plaintiffs in error, contended,

1. That from the facts found in this case, it is evident, that *Blackman & Betts* agreed to receive *Hurd's* notes in payment; and if they were so received, they operate *as payment,* and *Hoyt* is not liable. *Anderson* v. *Henshaw,* 2 *Day,* 272. *Bartsch* v. *Atwater* & al. 1 *Conn. R.* 409. *Bill* v. *Porter,* 9 *Conn. R.* 23. 30. 5 *Day,* 511.

2. That in consequence of the giving *Hurd* time of payment, without the knowledge or consent of *Hoyt,* the loss, by means of *Hurd's* insolvency, falls on *Blackman & Betts,* as the giving indulgence, without notice, operates as an agreement on their part to look to *Hurd* for payment, and discharges *Hoyt. Chitt. Cont.* 751, 2.

3. That as *Betts* assented to deduct *Hurd's* note, his doing so, and accepting the draft for the balance, is an implied agreement to receive said note as payment.

4. That the receipt, under the circumstances of this case, is conclusive. *Fuller* v. *Crittenden,* 9 *Conn. R.* 401.

*Butler* and *Carter,* for the defendants in error, contended,

1. That the plaintiffs below did not take *Hurd's* note in payment, and at their own risk, there being no express agreement to that effect. *Davidson* v. *Bridgeport,* 8 *Conn. R.* 477. *Bill* v. *Porter,* 9 *Conn. R.* 30. 31.

2. That there is no evidence of any agreement or understanding, with or without consideration, that the plaintiffs should take *Hurd* for their debtor, and discharge *Hoyt.* The fact that *Hoyt* went to the plaintiffs to settle the balance, shows, that neither he nor they so considered it.

3. That the receipt is to be used to effectuate, not to defeat, the previous understanding of the parties. *Tucker* v. *Baldwin,* 13 *Conn. R.* 137.

4. That the law never presumes that a creditor intends to take the *medium* of payment at his own risk, whether that medium be coin, bank bills or promissory notes. It is not according to the common course of things, for the creditor to discover the worthlessness of the medium of payment, until after a receipt has been given; and it would be unreasonable to make the receipt evidence against him, that he took it at his own risk. *Davidson* v. *Bridgeport, Bill* v. *Porter, Fuller* v, *Crittenden, Bartsch* v. *Atwater* & al., before cited. *Tobey* v. *Barber,* 5 *Johns. R.* 68. *Putnam* v. *Lewis,* 8 *Johns. R.* 389. *Willimantic School Society* v. *First School Society in Windham,* 14 *Conn. R.* 457. 468, 9. 1 *Greenl. Ev.* 246. 354.

*Fairfield,*
July, 1848.

Hurd
*v.*
Blackman.

HINMAN, J. The question in this case, is, whether any reason exists for setting aside the receipt of the 7th of *October* 1844. The account of the defendants in error accrued before that receipt was given, and was extinguished by it, unless there is a sufficient reason for setting it aside. The law with us is well settled, that a receipt in full will operate, like a discharge, to defeat any further claim by the party giving it, unless it is executed under such circumstances of mistake, accident or surprise, or is procured by such fraud, as will authorize a court of equity to set it aside. *Fuller* v. *Crittenden,* 9 *Conn. R.* 401. *Tucker* v. *Baldwin,* 13 *Conn. R.* 136.

The burden of showing that the receipt, in this case, ought to be set aside, was upon the plaintiffs in the original action. They gave it; they are claiming to recover a debt, which existed previous to its execution. Unless, then, they can show, that their debt was not intended to be included in the settlement made at the time it was given, it is extinguished by it. From the facts found by the auditor, it appears, that *Hurd,* one of the defendants in the original action, on the 7th of *October* 1844, called on the plaintiffs, for the purpose of settling all his liabilities to them. These liabilities consisted of a book account due from him alone, and the account in suit. The accounts were examined, and the amount found due on each of them. *Hurd* claimed, that a note for 100 dollars, previously given by his partner, should be deducted from the amount. It was so deducted, with the consent of

*Fairfield,*
*July, 1848.*

Hurd
*v.*
Blackman.

the plaintiffs, and a draft given for the balance ; and then this receipt was given. *Betts* at first objected to signing the receipt, on the ground that it might prevent the plaintiffs from collecting the note ; but on being informed, that it would not make any difference in that respect, and that there would be no trouble about it, he signed and delivered the receipt. Surely, there was no mistake or fraud in all this. The whole transaction seems to have been fair ; and the effect of the receipt understood by the parties.

We think, therefore, that the receipt must operate to discharge this claim ; and the decision of the superior court must, consequently, be reversed.

In this opinion WAITE, and STORRS, Js. concurred ; CHURCH, Ch. J. and ELLSWORTH, J. being absent.

Judgment reversed.