ROBERT E. TAFT *v.* THE VALLEY OIL COMPANY, INC.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 13—decided December 14, 1939.

*Robert P. Butler,* with whom, on the brief, was *Paul Volpe,* for the appellant-appellee (plaintiff).

*Carlos Ellis, Jr.,* with whom, on the brief, was *Russell Back,* for the appellant-appellee (defendant).

JENNINGS, J. The plaintiff brought suit for legal services and recovered a judgment. The plaintiff appeals on the ground that the court applied the wrong rule as to measure of damage. The defendant's appeal attacks the finding, the conclusion and claims error in the rulings on evidence. The exceptions to the finding concern for the most part disputed or immaterial questions and matters going to the merits of the defendant's claim, which are adequately presented in the finding as made. Such changes as the defendant is entitled to are included in the following statement.

All of the stock of the defendant, except qualifying

shares, was owned by James H. Porteous, who was the active manager of its business. The defendant employed the plaintiff as its attorney from February, 1932, to April 29, 1937. Beginning in 1934 it paid him $20 per week for one day's work each week and for services in excess of the one day the plaintiff customarily charged and was paid at the rate of $20 per day.

During 1935 the State of Connecticut notified the defendant that certain of its property would be required for the Middletown-Portland bridge. There was a dispute as to the amount to be paid. Prior to November 1, 1935, the state offered the defendant $40,000. About November 15, 1935, Porteous told the plaintiff that the state had him whipped, that he was a sick man and that the plaintiff would have to take entire charge of the matter. The plaintiff told Porteous that if no more than $40,000 was realized there would be no charge for his services but that he would charge a reasonable amount on any excess over this amount. Porteous made no objection. The plaintiff spent most of his time on this matter between November 15th and December 31, 1935, and some time in January. Solely as a result of his efforts the matter was settled by the payment of $90,000 plus the conveyance of real estate worth $4000.

About January 16, 1936, Porteous expressed his satisfaction with the plaintiff's work and offered him $500, which the plaintiff refused. About January 24, 1936, plaintiff and defendant agreed on full compensation for the plaintiff's services in the bridge matter as follows: that as long as Porteous remained in control of the defendant, the latter would employ the plaintiff as counsel at $1040 per year for one day's service each week, extra services to be compensated

at a reasonable rate; $500 cash; and a receipted bill for $155 for merchandise sold the plaintiff.

As a part of this agreement and at the request of Porteous or one Russett, defendant's secretary, plaintiff prepared and signed the receipt, defendant's exhibit 4. This was prepared in collaboration with and, in part, dictated by Russett. Plaintiff did not consider it necessary to include the employment feature of the agreement in the receipt. What Porteous wished was a receipt for $500. There was no discussion about putting the employment agreement in writing since the parties had amicably agreed and the receipt was an afterthought.

The agreement was made between Porteous and the plaintiff alone and the receipt by Russett and the plaintiff alone. No other attorney was present. Plaintiff was employed as counsel for the defendant under this agreement until April 29, 1937, when he was discharged without sufficient cause. The expert testimony of two attorneys experienced in eminent domain cases was to the effect that the plaintiff's services in the bridge matter were worth at least $10,800, being twenty per cent of the amount recovered above $40,000. There was no other testimony on this point.

The receipt referred to in the finding reads as follows:

"Middletown, Conn., January 24, 1936.

"Received of James H. Porteous the sum of Five Hundred (500) Dollars in cash and receipted bill for $155, being bill for installation of oil burner at Unionville, Conn., in full settlement of all claims for services in connection with the purchase by the State of Connecticut of land in Middletown and Portland, Connecticut, from the Valley Oil Company.    Robert E. Taft."

No question is made in the defendant's brief about

the authority of Porteous to bind the corporation. The issue of the applicability of the Statute of Frauds is pursued neither in the assignments of error nor in the brief. The defendant's principal claims are that the receipt recited was either a complete discharge in itself or an accord and satisfaction.

Under our early decisions, a receipt was regarded as a discharge of the debt, equivalent to a release, and could be avoided only on the ground of fraud, accident, mistake or the like. *Fuller* v. *Crittenden,* 9 Conn. 401, 404; *Hurd* v. *Blackman,* 19 Conn. 177, 181; *Beam* v. *Barnum,* 21 Conn. 200, 204; *Aborn* v. *Rathbone,* 54 Conn. 444, 446, 8 Atl. 677; *Ford* v. *Hubinger,* 64 Conn. 129, 132, 29 Atl. 129; *Johnson* v. *Cooke,* 85 Conn. 679, 683, 84 Atl. 97. The fact that this doctrine was not followed in other states was recognized. *Bonnell* v. *Chamberlin,* 26 Conn. 487, 492. The question was touched upon in *Shmilovitz* v. *Bares,* 75 Conn. 714, 717, 55 Atl. 560, and was squarely raised in *Johnson* v. *Shuford,* 91 Conn. 1, 3, 98 Atl. 333. In dealing with the effect of a receipt in full in the latter case, the court held that it was prima facie evidence of payment only and not conclusive. "A receipt is an admission only, and the general rule is that an admission, though evidence against the person who made it, is not conclusive except as to the person or persons who may have been misled or prejudiced by it." Id. *Nicewicz* v. *Nicewicz,* 104 Conn. 121, 123, 132 Atl. 399. These recent cases bring our law into harmony with that generally followed elsewhere. 5 Wigmore, Evidence (2d Ed.) § 2432; 53 C. J. 1196; 2 Jones, Evidence (4th Ed.) § 491. The finding shows that the receipt was not the complete discharge and release claimed by the defendant.

The defendant, in its claims of law and in its brief, raises the question as to the effect on the transaction

of the fact that the plaintiff was an attorney dealing with his client and that the client was without counsel at the time the agreement was made. This situation requires that the transaction be scrutinized with great care. *McKnight* v. *Gizze,* 107 Conn. 229, 234, 140 Atl. 116. So examined, the finding shows that the attorney was engaged in purely routine matters for the defendant. The dispute with the state was not of that class. It was of great importance to the defendant and arose at a time when Mr. Porteous was ill and "whipped." He was glad to turn the whole matter over to the plaintiff under an agreement that if no more than $40,000 was secured, there would be no charge and that a reasonable fee would be asked on any excess over that sum. Solely due to the efforts of the plaintiff, the amount collected was $94,000. Far from being unconscionable because of the relationship of the parties, the finding of the contract of employment as a part of the consideration for the settlement was the only reasonable one, particularly when the plaintiff had just categorically rejected a settlement of approximately the amount named in the receipt. Under the peculiar circumstances disclosed by the finding, it would appear that the plaintiff rather than the defendant was the party needing skilled counsel. The appeal by the defendant to the standard of ethical conduct loses force when it is considered that it secured $54,000 through the unaided efforts of the plaintiff for which service it claims to have made payment in full for $655.

The second claim of the defendant is that the acceptance of any sum by the plaintiff and his giving of the receipt in full was a complete accord and satisfaction. The court made no finding with respect to this, based its decision upon the ground that the discharge of the plaintiff constituted a substantial failure

of consideration as regards the second contract of employment, and gave judgment for the plaintiff upon the basis of his services in securing the damages for the taking of the defendant's property. The plaintiff's brief followed the court as to failure of consideration but claimed, in addition, that the new contract was an executory accord rather than an accord and satisfaction.

The finding clearly shows an accord when the new contract was entered into. The question as to whether the accord was actually satisfied by the promise of employment or was to be satisfied by employment in the future is one of intention. *Goodrich* v. *Stanley,* 24 Conn. 613, 623; *McGovern Granite Co.* v. *Veterans' Home Commission,* 124 Conn. 304, 308, 199 Atl. 441; *Halloran* v. *Fischer,* 126 Conn. 44, 9 Atl. (2d) 290; 10 A.L.R. 222, 234, note; 1 Am. Jur. 251, § 65, 253, § 67. This intention is not found and there is nothing in the record to show whether the new contract is an accord and satisfaction as claimed by the defendant or an executory accord as claimed by the plaintiff. If it was an accord and satisfaction, the new contract became substituted for the contingent fee contract, extinguished it and damages should have been based on the breach of the former. *Riverside Coal Co.* v. *American Coal Co.,* 107 Conn. 40, 47, 39 Atl. 276. In such a case, the partial failure of consideration for the new contract would give the plaintiff rights under it, but would not permit him to regard it as never having come into effect and to fall back upon the breach of the original obligation as a measure of damages. *Post* v. *Thomas,* 212 N. Y. 264, 274, 106 N. E. 69. See also *Crowther* v. *Farrer,* 15 Q. B. 677, 679; *Billings* v. *Vanderbeck,* 23 Barb. (N. Y.) 546, 552; *Pignone* v. *Brooks,* 120 N. J. L. 258, 199 Atl. 372; *Moers* v. *Moers,* 229 N. Y. 294, 300, 128 N. E. 202; *Arrowood* v. *McMinn*

*County,* 173 Tenn. 562, 570, 121 S. W. (2d) 566, 569; *Wheeler* v. *Woods,* 205 Iowa 1240, 219 N. W. 407.   If it was an executory accord, damages might have been based, as they were, on the breach of the contingent fee contract.   *Goodrich* v. *Stanley,* supra; *Milici* v. *DiFrancesco,* 122 Conn. 267, 272, 188 Atl. 884; Restatement, 2 Contracts, § 417.   The basis of computation is an important element in the judgment.   Since, because of the lack of a finding on this vital point, it cannot be ascertained whether the court was justified in using the breach of the contingent fee contract as a measure of damages, the case must be sent back for a new trial.   This discussion covers the claim of the defendant that the wrong rule of damages was applied.

The rulings on evidence were too clearly right to merit discussion.

The plaintiff bases his appeal on the failure to base the damages awarded on the only evidence in the case as to the value of the services rendered.   As before stated, this evidence was given by attorneys experienced in eminent domain cases.   Even so, the opinion of experts on such matters is not binding on the court, which may use its general knowledge of what would be reasonable compensation in such cases.   *Gruskay* v. *Simenauskas,* 107 Conn. 380, 387, 140 Atl. 724; *Carangelo* v. *Nutmeg Farms, Inc.,* 115 Conn. 457, 463, 162 Atl. 4.

There is no error in the plaintiff's appeal; there is error and a new trial is ordered on the defendant's appeal.

In this opinion the other judges concurred.