[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of a demand for payment for the sale and delivery of plumbing and air-conditioning materials.
The following factual scenario may be determined from the evidence: the plaintiff, Shelton Winair Co. (hereinafter Shelton) is a Connecticut corporation with its principal place of business in Shelton, Connecticut, and it is in the business of — selling, at wholesale, plumbing and air-conditioning materials.
The defendant Arch Fracker Heating Plumbing Contractor, Inc. A/K/A Arch Fracker Heating and Plumbing (hereinafter Fracker Plumbing) is a Connecticut corporation with its principal place of business in Bridgeport, Connecticut and it specializes in the installation of plumbing and air-conditioning materials in commercial projects. The defendant Archibald F. Fracker A/K/A Archie Fracker, A/K/A Arch Fracker (hereinafter Fracker) is the president of Fracker Plumbing.
On March 30, 1983 Fracker Plumbing and Fracker opened an CT Page 2345 account with Shelton as to the sale and purchase of plumbing and air-conditioning materials. At the time of the opening of the account the parties entered into a credit information and a credit agreement (hereinafter credit agreement). The agreement sets forth information as to the credit background of Fracker Plumbing and Fracker. The crucial aspect of the agreement is set forth in the guaranty. The following is the pertinent aspect of the guaranty:
"It is understood that if Shelton Winair Co. extends credit and/or delivers merchandise to the undersigned on credit, or in behalf of any corporation or partnership in which the undersigned is a principal, and any delinquent account is given to an attorney for collection, the undersigned in behalf of himself individually, and any corporation or partnership which the undersigned may represent, irrespective of any and all invoice terms accompanying said delivery or deliveries, and irrespective of the identity of the vendee, will pay the account debt plus all costs of collection, including reasonable attorney's fees, and interest on any delinquent balance at the rate of eighteen per cent per annum, commencing with the period of default, unless otherwise agreed in writing."
Thereafter in accordance with the terms of the agreement, Fracker Plumbing purchased materials from Shelton over a period of many years. During this period of time, Fracker Plumbing ran up a substantial deficit in this account. Thereafter, Shelton terminated the credit account and demanded payment from Fracker Plumbing and Fracker.
The corporate defendant Fracker Plumbing has acknowledged its responsibility for the indebtedness. However, Fracker has denied any personal responsibility for the indebtedness. It is Fracker's position that he signed the credit agreement in his capacity as an officer of Fracker Plumbing, and that he did not personally guaranty any indebtedness in the account. It is Shelton's position that Fracker, in accordance with the terms of the credit agreement, signed the credit agreement not only for the corporation but that he signed as a personal guarantor on the credit agreement.
"`The question is not what intention existed in the minds of the parties but what intention is expressed in the language used.'"Ives v. Willimantic, 121 Conn. 408, 411 185 A. 427 (1936); LeonardConcrete Pipe Co. v. C.W. Blakeslee Sons, Inc., supra; Powell v.Burke, 178 Conn. 384, 387, 423 A.2d 97 (1979). This is so where the parties have their agreement in writing. Sturman v. Socha,
CT Page 2346 supra; Robert Lawrence Associates Inc. v. DelVecchio, 178 Conn. 1,14, 420 A.2d 1142 (1979). "In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Sturman v. Socha,
supra, 10; Marcus v. Marcus, supra, 141-42; Sturtevant v.Sturtevant, 146 Conn. 644, 647-48, 153 A.2d 828 (1959). Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. "`A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings. Downs v.National Casualty Co., 146 Conn. 490, 494, 152 A.2d 316 [1959].'"Collins v. Sears Roebuck Co., 164 Conn. 369, 374, 321 A.2d 444
(1973); see Reese v. First Connecticut Small Business InvestmentCo., 182 Conn. 326, 327, 428 A.2d 99 (1980). Barnard v. Barnard,214 Conn. 99, 110 (1990).
In reading the guaranty the language is quite clear and unambiguous. The language used leaves no room nor no need to interpret its meaning. Though Fracker's name appears on a signature line with "Pres" and "Tres" appearing below the line, these references are not sufficient to negate the unambiguous language set forth in the credit agreement. Though Fracker testified at the time of the hearing that he did not sign the credit agreement to bind himself personally, the court discounts this testimony because of the clear language contained in the credit agreement. The court concludes that both Fracker Plumbing and Fracker are responsible for the debt due and owing to Shelton.
Now we must approach the question of damages and attorney's fees. There is little dispute that Shelton supplied materials to Fracker Plumbing and Fracker and that the unpaid balance in the credit account was Forty-seven thousand nine hundred seventeen dollars and ninety-eight cents ($47,917.98). However, Shelton was paid Twenty-six thousand dollars ($26,000) by a bonding company in connection with work performed by Fracker Plumbing on a federal project, thus leaving a principal balance due of Twenty-one thousand nine hundred seventeen dollars and ninety-eight cents ($21,917.98).
However, under the terms of the credit agreement, Shelton is entitled to reasonable attorney's fees as part of the cost of CT Page 2347 collection. Now it must be determined what are reasonable attorney's fees.
"`As we stated in Hoenig v. Lubetkin, 137 Conn. 516, 524-25,79 A.2d 278 (1951), "[n]o one can state the reasonable value of legal services as a fact. . . . The value is based upon many considerations." In that case we upheld the trial court's exercise of its fee-awarding discretion, finding that the court had been "advised in detail of the time consumed in and of the efforts devoted to the preparation of the case; and it was, of course, aware of the activities of counsel during the course of the actual trial". . . . We have repeatedly held that "courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described." Not only is expert testimony not required, but such evidence, if offered, is not binding on the court. Taft v. Valley Oil Co., 126 Conn. 154, 161,9 A.2d 822 (1939); Carangelo v. Nutmeg Farms, Inc., 115 Conn. 457,463, 162 A. 4 (1933); Gruskay v. Simenauskas, 107 Conn. 380, 387,140 A. 724 (1928). Also see our recent decision in StormAssociates, Inc. v. Baumgold, 186 Conn. 237, 440 A.2d 306 (1982).'"Piantedosi v. Floridia, 186 Conn. 275, 279 (1982).
As we emphasized in Appliances, Inc. v. Yost, supra, 680-81, and Piantedosi v. Floridia, 186 Conn. 275, 279, 440 A.2d 977
(1982), courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. Bizzoco v. Chinitz,193 Conn. 304, 310 (1984).
In accordance with these guidelines, the court has taken into consideration and reviewed all of the exhibits, the time records setting forth the details of the litigation, the complexity of the issues involved, and the time spent in actually litigating the issues before the court. Based on this review, Seven thousand-five hundred dollars ($7,500.00) is awarded as reasonable attorney's fees.
Accordingly, judgment may enter in favor of Shelton as against Fracker Plumbing and Fracker, jointly and severally in the amount of Twenty-nine thousand four hundred-seventeen dollars and ninety-eight cents ($29,417.98). Costs are assessed.
BY THE COURT,
John M. Byrne, Judge CT Page 2348