Mills *v.* Mills.

Francis B. Mills *vs.* Michael F. Mills.

A. who was about to commence a suit at law, retained the respondent, who was a practising attorney, and conveyed to him by an absolute deed certain land, the principal property of the client and worth about $300, as security for his fees, for the expenses of the suit which the respondent agreed to advance, for a liability assumed by him in giving bond for costs, and for a small sum of money lent, the respondent agreeing in writing to reconvey on the satisfaction of A.'s obligation to him in the above respects. A. was an ignorant man and inexperienced in such business. The suit was brought and prosecuted by the respondent, he paying all expenses, and about three years after a judgment recovered, the amount of which was collected by the respondent but was insufficient by nearly $200 to satisfy his account. Immediately after the conveyance the respondent had taken possession of the land and had occupied it ever since, paying all taxes upon it. A. soon after the conveyance, had repaid him the money loaned, and the respondent after the judgment had paid A. a small sum on account. About a year after the judgment, A. applied to the respondent for a settlement of the account between them, and the respondent offered to pay him $10 if he would give up the agreement to reconvey. The $10 was taken by A., but the agreement was not given up. The respondent however believed it to be a final settlement. A. soon after died, and the petitioner, who had acquired his title to the land, brought a petition to be allowed to redeem. Held, 1. That the original conveyance, whether regarded with reference to its object alone, or in connection with the written agreement to reconvey, or with reference to the relations of the parties as attorney and client, was to be considered as a mortgage; and 2. That the right to redeem was not extinguished by the acceptance of the $10 afterward paid by the respondent, in the absence of satisfactory proof that A. understood it as a final settlement and in view of the relations of the parties.

There are no transactions which courts of equity will scrutinize with more jealousy than dealings between attorneys and their clients, especially where the latter are persons of inferior capacity and inexperienced in business.

This was a bill in chancery for the redemption of certain mortgaged premises. The facts were reported by a committee to whom the case was referred by the superior court.

Dennis Whalley, who was then the owner in fee of the land in question, in March 1841 applied to the respondent, who was then a practicing attorney, to bring an action of trespass for him to the county court, the action involving the title to the land in question, and retained him as his counsel. The respondent soon after brought the suit, and at Whalley's request gave bond for him for the prosecution of the suit.

Whalley not having much property except the land in question, and the respondent being unwilling to carry on the suit without security for the costs which he might be obliged to pay, and for his fees and disbursements, Whalley proposed to mortgage the land for his security, but the respondent declined to take a mortgage, for the reason that his disbursements and fees in the case might amount to the value of the land, and he did not wish to be under the necessity of foreclosing the same in such an event; he having at the request of Whalley, retained associate counsel in the suit and become responsible for their fees. He proposed therefore that Whalley should convey the land to him in fee simple without condition and that he would take upon himself the entire responsibility of the prosecution of the suit and pay all the expenses of the same, and that after the suit should be ended, upon the payment by Whalley of all his disbursements and fees, he would re-convey the land to him. Whalley accepted the proposition, provided the respondent would at the same time loan him fifty dollars, which he agreed to do; and in accordance with this arrangement, on the 20th of July following, he executed and delivered an absolute warranty deed of the land to the respondent, it being at the time agreed between them, that one Thomas Curtis should call the next morning on the respondent with Whalley, and the above agreement should be stated in his hearing. In pursuance of this arrangement Whalley, Curtis and the respondent had an interview upon the subject the next day, July 21st, when it was agreed between the parties that the agreement should be reduced to writing; and the respondent drew up a writing accordingly which was executed by himself and Whalley in the presence of Curtis as witness, and delivered to Curtis for safe keeping. At the same time the respondent loaned Whalley $50, and took his note for that amount payable within one year from date with interest. Whalley was an illiterate man, a foreigner and unable to write. The note was signed by his mark. This note he afterward paid and took up.

The respondent continued to prosecute the suit and in

Mills *v.* Mills.

August 1844 obtained judgment in favor of Whalley for $54.70 damages and $115.55 costs of suit, for which execution was issued, and the whole amount soon after collected by the respondent and applied to his own use.

Soon after the determination of the case Whalley called on the respondent for some money, and he paid him twenty dollars. He soon after removed to the state of New York. At this time he was unable to pay the respondent his account for fees and disbursements in the suit. In April, 1845, Whalley returned to this state to spend a few days, and called on the respondent in relation to his account, and they talked over the whole matter relating to the lawsuit, the land, and the account. The respondent offered to pay him ten dollars if he would give up the written agreement, which he received, but did not in fact give up the writing. The respondent however supposed and believed that it was understood between them that the payment of the ten dollars settled the whole matter. Whalley immediately after returned to the state of New York, and the respondent had not seen him since. The respondent after this paid small sums of money to different persons, which grew out of the lawsuit and had not been paid before, but he did not enter them on his books as charges against Whalley, because he supposed that the whole account between them was settled.

Whalley died in the year 1851, and the petitioner had acquired his title to the land in question.

The value of the land in the year 1841, and until after the year 1845, was about $300. It had since then become much more valuable. The respondent's account of fees and disbursements above the amount received by him from the judgment collected and from the use of the land, was about $175, the amount depending upon questions as to some of the items which it is unnecessary to notice here.

Upon the above facts the case was reserved for the advice of this court as to the judgment to be rendered.

*Granger* and *Peck*, (with whom was *Hall*) for the petitioner.

1. The conveyance from Whalley to the respondent was

in equity a mortgage. The written contract to reconvey has all the effect as between the parties that it could have if it was embraced as a defeasance in the mortgage. Even if there is only a parol agreement to reconvey on payment of the debt, or fulfillment of any other condition, it can be proved by parol evidence and has the same effect between the parties, in a court of equity, as if it was in writing. The intention and object of the parties is the decisive consideration, and whenever a court of equity can see that the conveyance was intended only as a security, it will regard it as a mortgage whatever may be its form. And on such an enquiry all the circumstances may be shown. *Foster* v. *Woods*, 16 Mass., 116. *Yarborough* v. *Newell*, 10 Yerg., 376. *Delahay* v. *Mc Connell*, 4 Scam., 156. *Overton* v. *Bigelow*, 3 Yerg., 513. *Eiland* v. *Radford*, 7 Ala., 724. *Crane* v. *Bonnell*, 1 Green's Cha., 264. *Ketcham* v. *Johnson*, 3 id., 370. *French* v. *Lyon*, 2 Root, 69. *Belton* v. *Avery*, id., 279. *Brainard* v. *Brainerd*, 15 Conn., 575. *Wright* v. *Bates*, 13 Verm., 341.

2. The conveyance having been originally a mortgage, nothing that has since occurred has destroyed the right of redemption. That right has never been released by any instrument, and the transaction of April, 1845, can not have that effect. It is not found that Whalley received the $10, as in full or regarded the transaction as a settlement. It does appear that he did not give up the writing, as desired by the respondent.

3. The relations of the parties was such that the court will make every intendment in favor of the right of redemption. Whalley was a foreigner, unable to write, and ignorant of the mode of doing such business. The respondent was his attorney. The relation of the parties ought to be decisive in determining the view which the court will take, both of the original transaction and of the pretended settlement. 2 Sw. Dig., 63, *et seq.*

*Hubbard* and *Hitchcock*, for the respondent.

1. The conveyance was not a mortgage. It is expressly found that Whalley proposed to have it a mortgage and that

the respondent refused to take it as such, and Whalley understandingly made it an absolute deed.   There is no averment in the petition, or finding in the report, of any undue influence having been used to procure the deed.

2. The writing given afterward is not a contract of defeasance and does not qualify the deed.  It contains the appropriate words of a contract to convey, and not of the defeasance of a mortgage.   It does not say that the deed shall, on performance by Whalley, become void, but that on such performance the respondent will reconvey.   It also recognizes the right of the respondent to dispose of the land absolutely.

3. The parties always treated the conveyance as absolute. The writing was never recorded by Whalley.   He made no agreement to indemnify the respondent if the lawsuit should be unsuccessful, and the suit involved the title to the same land conveyed to the respondent; nor any agreement by which he was personally responsible for the expenses of the suit to the respondent.   The only agreement was, that if he did not pay the respondent need not convey.   It is necessary, to make this a mortgage, that there should have been a valid claim on the mortgagor personally.   Whalley instead of paying is only calling on the respondent for more money.

4. The whole matter was settled by the agreement of April, 1845.   It was so understood by the parties, as is evident from the fact that they ever after treated it as settled. The land at that time was worth no more than the amount of the respondent's account.   There was no inadequacy of consideration, and no advantage taken.   And the claim now made would never have been made, but for the increase in the value of the land since that time.   The petitioner having purchased the title of Whalley since his death, and with a view to make a profit out of the purchase by reviving this claim which the parties considered as settled, is not entitled to any favor, and should be concluded by the settlement which Whalley himself must have understood to have been made.

ELLSWORTH, J.   We are all satisfied that the petitioner is entitled to redeem.   Whether we consider the true nature of

the transaction of the 20th of July, 1841, (the date of the deed in question) or the then relations of the parties, one the client and the other the attorney, or the writing of the 21st of July, we come to the same conclusion, that the deed of Whalley can be considered only as a mortgage, and that the land is still open to redemption.

It appears that Whalley was about to embark in a lawsuit which involved his title to this piece of land, and applied to Mr. Mills to assist him with his professional and other services, and gave him a deed of the land for that purpose.

Now an absolute deed given under such circumstances, were there nothing else, would be open to much question and doubt, and unless it could be shown that the client had a clear understanding of the nature and effect of his deed, and received a fair consideration for the conveyance, it would be difficult to uphold the transaction, however upright it might be in fact, without overruling many of the cases in the equity books.

If the transaction of the 20th of July, was indeed a sale, as it is claimed to be by the respondent, we are constrained to enquire what was the amount of the consideration paid by Mr. Mills? This should be reasonably certain and definite, much more so than it appears to be at present. But it was not a sale, and was not so understood to be by Whalley the grantor. This is evident if we look at the parol condition which was put into writing the next day, and made part of the conveyance. This writing declared that the land was conveyed as security for future contingent expenses and a loan of $50. When did this security cease to be such and the sale become an absolute one? " Once a mortgage always a mortgage," is a well known maxim, and why does it not apply to this case?

But it is said that the arrangement of April, 1845, was one which discharged the right of redemption, and rendered the conveyance an absolute and irredeemable grant. We do not so regard it. At that time Whalley returned for a few days to Norfolk, from the state of New York, where he then resided, and while there called on Mr. Mills, to make some

enquiries about his account in the matter of the lawsuit. At this interview Mr. Mills paid him $10 to get up the conditional writing of the 21st of July. The report states that Mr. Mills supposed and believed that it was understood between them that the $10 settled the whole affair, but it does not state that Whalley understood it so, nor on what grounds Mr. Mills had a right to believe as he did. The writing has never been given up in fact, nor the equity, if there was any, released or extinguished. Whalley seems to have been an inferior man, of foreign birth and of little knowledge, (for he could not write his name,) and to have had but little experience in business of this kind, and we can not believe that he has intended at any time to change the character of his first conveyance, and extinguish his equity to redeem the property in question.

There are no transactions respecting which courts of equity are more jealous and particular, than dealings between attorneys and their clients, especially where there is great intellectual inequality, and comparative inexperience on the part of the latter.

We are quite satisfied on the whole with the conclusion to which we have come, that the petitioner has made out his case and is entitled to the relief he asks for.

We cite, in support of our views, two cases from our reports which we do not recollect to have heard mentioned in the argument at the bar. *Bacon* v. *Brown,* 17 Conn., 29, and *Jarvis* v. *Woodruff,* 22 id., 548.

In this opinion the other judges concurred.

Judgment for petitioner advised.