JAMES E. McKNIGHT ET AL. vs. JAMES GIZZE ET AL.

Third Judicial District, Bridgeport, October Term, 1927.

WHEELER, C. J., HAINES, HINMAN, BANKS and FOSTER, Js.

The condition of a mortgage deed must describe the debt with
   sufficient certainty to enable subsequent purchasers and credi-
   tors to ascertain, either from the instrument itself or by inquiry
   *aliunde,* the extent of the incumbrance.
Transactions between attorney and client involve such special trust
   and confidence and require such a degree of good faith and
   mutual understanding, particularly where there is intellectual
   inequality and comparative inexperience on the part of the
   client, that every doubt arising from the relationship will be
   resolved in his favor. The burden is not upon the client to
   establish fraud and imposition, but upon the attorney to show
   fairness, adequacy and equity.
After the defendant, an elderly, illiterate foreigner, unable to speak
   the English language, had been confined in a police station for
   two days without communication with friends or family upon
   a charge of murder in the first degree, and had reached a state
   of great terror and apprehension, the plaintiffs, who were attor-
   neys at law, visited him at the request of, and in company with,
   two of his children. He there turned over to the plaintiffs all
   his personal property, valued at $2,000, and, being informed by
   them that this would be insufficient to meet the expenses of
   his defense, he executed to them a note for $10,000 secured by
   a mortgage upon his remaining assets, consisting of real estate,
   upon their representation that this was necessary to ensure the
   payment of their fees and to protect the property against an
   impending attachment in an action about to be instituted by
   the administrator of the murdered victim, and upon their assur-
   ance that their charges would be reasonable in amount and
   would leave a balance of the $10,000 to be returned to him.
   They caused this mortgage to be recorded only a few minutes
   before the expected attachment was made; and after the de-

fendant had been acquitted of the charge of murder, brought the present action to foreclose it, alleging that it represented a debt of $10,000 in existence at the time it was executed. *Held:*

1. That the mortgage was void as against subsequent incumbrancers, since it contained neither a true description of the debt, nor a statement of facts by which such information could be obtained.

2. That the mortgage was likewise void as against the defendant, since, under all the circumstances, it was inequitable and obtained by means of coercion and duress.

Argued October 25th, 1927—decided January 27th, 1928.

ACTION to foreclose a mortgage of real estate, in which the defendant James Gizze filed a counterclaim for a judgment declaring the mortgage null and void, brought to the Superior Court in New Haven County and tried to the court, *Marvin, J.;* judgment for the defendants upon the complaint and for the defendant James Gizze upon the counterclaim, from which the plaintiffs appealed. *No error.*

*William W. Gager,* with whom was *Frederick W. Dauch,* for the appellants (plaintiffs).

*Charles S. Hamilton,* for the appellee (defendant James Gizze).

HAINES, J.   There is no important dispute as to the following facts: The plaintiffs are practicing attorneys at Waterbury, but not partners.   The defendant Gizze was born in Italy, is "well along in years," entirely uneducated and unable to read or write in either Italian or English, and he can speak but few words of the latter.   In June, 1925, he owned both real and personal property, the former being in or near Waterbury, and the latter consisting of $600 on deposit and a mortgage on the property of a third party for $1,400.   He considered the net value ·of his

property to be $20,000.  On June 8th, 1925, he was
arrested by the police of Waterbury for shooting and
killing one Gaudioso and held at the police station on
a charge of first degree murder.  From the time of his
arrest till the evening of June 10th he was denied
access to or communication with his family, but about
six o'clock in the afternoon of this day, a son and a
daughter were allowed to see him, together with the
plaintiffs, one of whom had been asked by the son and
the other by the daughter of the defendant, to act as
counsel for him.  At this interview the defendant used
the Italian language and the plaintiff McKnight the
English, while the son and daughter and the plaintiff
Mascolo spoke both languages.  The defendant told
the plaintiffs that he had confessed the shooting of
Gaudioso, and this was confirmed by the captain of
police.  The plaintiffs had also been informed that at
nine o'clock the following morning an administrator on
the estate of Gaudioso was to be appointed and that
an attorney acting for the Gaudioso family would at
once file a suit against the defendant for damages for
the shooting of Gaudioso.

There was a second interview between the same
parties, later that evening, and the plaintiffs informed
the defendant that he was charged with first degree
murder and that the damage suit was to be brought
against him the following morning.  The defendant
told the plaintiffs what property he had as above de-
scribed, and the value he placed on it.  Vital differences
exist between the plaintiffs and defendant as to what
occurred from this time.  The trial court found that
the plaintiffs told the defendant, in effect, that the $600
of cash and the mortgage of $1,400, a total of $2,000,
which the defendant turned over to the plaintiffs,
would be hardly sufficient to pay the expenses of his
defense and that in view of the impending attachment

of his property in the damage suit, they should be pro-
tected in their fees for defending him, and in order to
protect the property and secure their fees, he should
give them a mortgage for $10,000; their fees would only
be reasonable charges and would leave a balance of
the $10,000 to be returned to him, and he "need not be
afraid." The note and mortgage were accordingly
signed and delivered by the defendant at this interview.
The details of the agreement are the crucial point in
the case, and the plaintiffs seek a correction of the find-
ing in accord with their claims, bringing before us all
the evidence given at the trial. Examining this with
care, it is clear that there is testimony in support of
both claims; it was the province of the trial court to
resolve this dispute and determine the facts, and it
did so in favor of the defendants. The evidence shows
nothing so unreasonable in this conclusion as to justify
our interference, and these requests for changes in the
finding are denied.

Upon receiving the note and mortgage, the plaintiffs
at once placed the same upon record, and a few minutes
afterward, an attachment for $25,000 was made in the
damage suit referred to. Thereafter the trial of the
defendant took place and resulted in his acquittal of
the charge of murder, the plaintiffs acting throughout
as his counsel.

The complaint in the present action is based upon
the allegation of the plaintiff's ownership of the note
and mortgage, and that when given it represented a
then existing debt of $10,000. It is found that there
was in fact no debt due to the plaintiffs at that time,
but that the note and mortgage were given as security
for an obligation of less than $10,000 to be thereafter
incurred, an amount not only not ascertained at the
time, but probably unknown to either party and cer-
tainly to the mortgagor. It results that the amount

is untruly stated as $10,000, but that in any event it was not intended to secure more than a part of such sum. There is nothing in the papers to show the true nature or extent of the obligation, and no facts are there stated by which such information could be obtained by inquiry. The mortgage is clearly null and void as against subsequent incumbrancers. "The debts must be described with sufficient certainty to enable subsequent purchasers and creditors to ascertain, either by the condition of the deed or by inquiry *aliunde,* the extent of the incumbrance." *Lamson Lumber Co.* v. *Chiarelli,* 100 Conn. 301, 309, 123 Atl. 909; *City National Bank* v. *Stoeckel,* 103 Conn. 732, 132 Atl. 20; *Rosenbluth* v. *DeForest & Hotchkiss Co.,* 85 Conn. 40, 47, 81 Atl. 955; *Hart* v. *Chalker,* 14 Conn. 77.

In addition to a general denial of the allegations of the complaint, the defendant plead that there was not at the time the note and mortgage were given, and there is not now, any debt owing to the plaintiffs from the defendant, and that the circumstances under which the signing of these papers was procured, amounted to coercion and fraud, rendering them null and void. By counterclaim, the defendant asked relief accordingly. The trial court held the note and mortgage void and gave judgment for the defendant. The underlying facts upon which the judgment rests, may be thus summarized: The defendant was an elderly foreigner, ignorant and uneducated, unable to read or write, and unable to speak the English language; he was under arrest for a crime which carried a penalty of death, and was confined without communication with his family or friends from sometime on the eighth to the evening of the tenth and he had admitted the killing of Gaudioso. In this situation he was informed by his counsel that he was to be tried for first degree murder and that a damage suit was to be brought against him by

the family of Gaudioso the following morning. That he was in a "nervous condition of terror and great apprehension as to what would be done with him," as the trial court finds, is an obvious inference. He was in this condition when told by his counsel that by reason of the pending suit for damages, the fees which they would expect for defending him on the murder charge would not be secure, unless he gave them a note and mortgage for $10,000 which they would put on the land records before the attachment in the damage suit was entered. It is true that some of these facts are attacked by motion to correct the finding, but a study of the evidence discloses no instance where the fact is found without evidence or where a legitimate inference is not drawn, by the trial court. We are· required to recognize that these were the circumstances under which the defendant executed and delivered the note and mortgage to the plaintiffs, his counsel. On these facts the trial court held "that any agreement made between the plaintiffs and the defendant James Gizze on June 10, 1925, under the circumstances, to pay the plaintiffs $10,000 for legal services of uncertain extent and duration, would have been and was inequitable and obtained by the plaintiffs by coercion and duress."

Courts of equity rightly scrutinize transactions between client and attorney with great care, for it is in the highest degree essential that the utmost good faith and mutual understanding be shown, and if there are doubts, they will be resolved in favor of the client. The relation of attorney and client is a highly confidential one, requiring of the attorney a degree of disinterestedness and fair dealing probably not exceeded in any other relation of parties before our courts. Where, as in this case, the client is ignorant and uneducated and wholly unable to adequately protect

himself, and is, furthermore, in a position which not only threatens his property but his life, the obligation becomes one of the profoundest character.

In *Mills* v. *Mills*, 26 Conn. 213, 219, we said: "There are no transactions respecting which courts of equity are more jealous and particular, than dealings between attorneys and their clients, especially where there is great intellectual inequality, and comparative inexperience on the part of the latter." "The relation of attorney and client . . . has always been regarded as one of special trust and confidence. The law therefore very properly requires that all dealings between an attorney and his client shall be characterized by the utmost fairness and good faith, and it scrutinizes with great closeness all transactions had between them. . . . So strict is the rule on this subject, that dealings between an attorney and his client are held, as against the attorney, to be prima facie fraudulent, that is to say, the burden is not upon the client to establish fraud and imposition, but the burden rests upon the attorney to show fairness,, adequacy and equity." *Morrison* v. *Smith*, 130 Ill. 304, 316, 23 N. E. 241; *Ross* v. *Payson*, 166 Ill. 349, 43 N. E. 399. "Undue influence exerted upon a mortgagor by the mortgagee, although not constituting actual duress, may be sufficient to invalidate the instrument, where it amounts to that kind of persuasion—equivalent to a sort of moral coercion—which may be exercised by one having authority and control over another, or by a superior intelligence and masterful will playing upon a feeble mind and pliant disposition, the free agency and choice of the mortgagor, in either case, being dominated and controlled to his prejudice." 41 Corpus Juris, p. 439, § 318, and cases cited.

The record before us forces the conclusion that the finding of the trial court which we have quoted was

justifiable, and the court did not err in decreeing the note and mortgage void.

There is no error.

In this opinion the other judges concurred.