[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is a law firm which has brought this action to collect attorney's fees from the defendant, its former client. Before the court is the plaintiff's application for a prejudgment remedy on which a hearing has been held.
On or about September 1, 1992, the defendant retained the plaintiff to prosecute an appeal from the judgment in her divorce. See Ashton v. Ashton, 31 Conn. 736, 627 A.2d 943 (1993), cert. denied, 228 Conn. 901 (1993), ("Ashton I"). The plaintiff paid a retainer of $15,000.00 and agreed to pay the plaintiff $225.00 an hour for the time of partners in the firm and $185.00 an hour for associates' time. The bill submitted by the plaintiff for Ashton I totals $22,381.74. Deducting the retainer the balance owing is $7,384.74. She did not prevail on appeal.
On or about April 9, 1993, the defendant retained the plaintiff to prosecute an appeal from a post-judgment order in her divorce action holding her in contempt of court. The defendant paid the plaintiff a $5,000.00 retainer and agreed to the same hourly rates as she had for the prosecution of her first appeal. This second appeal resulted in a four-word per curiam decision. See Ashton v. Ashton, 36 Conn. App. 918 (1994) ("AshtonII"). The plaintiff's bill for Ashton II totalled $24,911.24. Deducting the $5,000.00 retainer, the balance claimed is $19,911.24.
On September 2, 1993, the defendant retained the plaintiff to defend her in a summary process action. The defendant paid the plaintiff a $2,000.00 retainer and agreed to the same hourly rates as she had twice before. The plaintiff filed a motion to strike the summary process action, which the court (Melville, J.) granted. There was no appeal. The plaintiff's bill for services rendered totalled $5,411.80. Deducting the $2,000.00 retainer, the balance claimed is $3,411.80.
The plaintiff seeks a prejudgment remedy in the amount of CT Page 2702 $30,704.78, the total claimed to be owing on all three bills. General Statutes § 52-278d provides in pertinent part that a prejudgment remedy "hearing shall be limited to a determination of (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or setoffs, will be rendered in favor of the plaintiff. . . ."
The court has carefully studied the memorandum in opposition to the plaintiff's application filed by the defendant who appears pro se. As a threshold matter, the defendant claims that the plaintiff must make a "clear showing" in order to obtain a prejudgment remedy. The defendant cites Scaffone v. Annulli Sons, Inc., Superior Court, Judicial District of New Haven, No. 321855 (1992) and Bohan v. Last, Superior Court, Judicial District of New Haven, No. 328515 (1992), which so held in the wake of Connecticut v. Doehr, 500 U.S. ___, 111 S.Ct. 2105,115 L.Ed.2d 1 (1991). "Trial court cases, however, do not establish binding precedent." Statewide Grievance Committee v. Presnick,18 Conn. App. 316, 323 n. 3, 559 A.2d 220 (1989). Appellate court cases do. Since Scaffone and Bohan, our appellate courts have repeatedly endorsed the settled standard for probable cause. See, e.g., Calfee v. Usman, 224 Conn. 29, 36-38 (1992); Fischel v.TKPK Ltd., 34 Conn. App. 22, 24-25 (1994).
The defendant also suggests that the plaintiff may have committed legal malpractice in its representation of her by, for example, not filing a motion for articulation with the trial court and by advising her that post-judgment orders could not be included in her first appeal. While the latter claim is troubling; see Practice Book § 4006[1]; "[a]s a general rule, for a p[arty] to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care." (Footnote omitted.) Davis v. Margolis, 215 Conn. 408, 416, 576 A.2d 489
(1990).[2] The defendant has not done so. In addition, the damages claimed by the defendant as a result of any such want of care by the plaintiff is not even suggested at this time.
Turning to the parties' fee agreement, our Supreme Court has recognized that "[c]ontracts between attorney and client fall naturally into at least two categories: (1) those made before the relationship of attorney and client has commenced or after the relationship has terminated; and (2) those made CT Page 2703 during the relationship." DiFrancesco v. Goldman, 127 Conn. 385,392, 16 A.2d 828 (1940). Here, at least, two of the three contracts "were made during the existence of the relationship. Courts of equity scrutinize transactions made between attorney and client during the existence of the relationship with great care and if there are doubts they will be resolved in favor of the client. McKnight v. Gizze, 107 Conn. 229, 235, 140 A. 116;Mills v. Mills, 26 Conn. 213, 219. Nevertheless, an attorney is not prohibited from contracting with his client respecting his fees, and a contract thus made after the commencement of the relationship of attorney and client is not per se void but will by reason of the confidential nature of the relationship be closely scrutinized by the court. `No undue advantage can be taken of the relationship of attorney and client in order to procure such a contract; but where the parties are free to contract, their agreement should not be set aside or the agreed compensation withheld unless fraud has been perpetrated, undue influence exerted, material facts affecting the subject matter misrepresented or suppressed, or advantage taken of a position of confidence and trust to obtain an unconscionable advantage over the party, in which case a court of equity may grant relief from such oppression, and the attorney will be confined to a reasonable charge for compensation without regard to the attempted fixation of the value of his services.' 7 C.J.S. 1051; id., 1049; see Taft v. Valley Oil Co., Inc., 126 Conn. 154, 159,9 A.2d 822; Grievance Committee v. Ennis, 84 Conn. 594,605, 80 A. 767. This principle applies whether the contract for services is unexecuted or whether, as in this case, it was . . . executed. In either case, the contract will be sustained if found to have been fairly made and no unconscionable advantage taken of the client by the attorney." Id., 392-393. At this stage of these proceedings, there is no evidence on which the court may make a finding of fraud, undue influence, material facts misrepresented or suppressed or advantage taken of a position of confidence and trust. Therefore, at this juncture the court is bound by the hourly rates and other terms stated in the parties' fee agreements.
This, however, does not end the matter. The court still is duty-bound to scrutinize the plaintiff's itemized statements of services to ensure that the overall bill is reasonable. Cass Sons, Inc. v. Stag's Fuel Oil Co., Inc., 148 Misc.2d 640,561 N.Y.S.2d 519 (1990). Rule 1.5 of the Rules of Professional Conduct mandates that a "lawyer's fees shall be reasonable" and enumerates criteria by which reasonableness may be determined. CT Page 2704 Those rules are adopted by the judges of the superior court and, therefore are "laws." Steadwell v. Warden, 186 Conn. 153, 164
(1982) (Shea, J., dissenting). "There is no dispute that parties contract with reference to existing laws, except when the contract discloses otherwise." Hatch Corporation v. DellaPietra,195 Conn. 18, 21 (1985). "Thus, despite such a provision fixing attorney's fees in the parties' — the law between the parties — courts may inquire as to the reasonableness of the attorney's fee as part of their prevailing, inherent authority to regulate the practice of law." City of Baton Rougev. Stouffer Chemical, 500 So.2d 397, 401 (La. 1987).
"[A]ll of the time a lawyer spends on a case is not necessarily the amount of time for which he can properly charge his client." The Florida Bar v. Richardson, 574 So.2d 60, 63
(Fla. 1990), reh. den. What Judge Milton Pollock of the United States District Court for the Southern District of New York wrote several years ago is especially pertinent here:
 The "meter" approach (recording time) of computing compensation has created a tendency in applications of this sort to go so far as to obscure the objective value of the particular services to be evaluated in monetary terms. The meter method tends to disregard the fact that a fee for legal services must also bear a proper relationship to the value of the engagement to the client, the amount involved and the importance of the services required. The requirement that time records be kept by counsel seeking compensation through the courts was initiated as a check against runaway charges on the upside and to put in bold relief the actual time required and spent on a legal task. In short, time records were required to highlight unrestrained fee demands. However, the requirement of time records was not an invitation for the distortion of the value of the required services or the proliferation of unnecessary unwarranted activity in the light of the overall objective requirements of the case.
 It is possible to spend an enormous amount of time on relatively and objectively trivial and inconsequential matter either through a failure to appreciate the overall place in the total CT Page 2705 engagement of a particular segment, or through lack of basic fundamental knowledge of the subject matter, or some other reason. Consequently, before the meter is allowed to sweep the costs out of proportion to the subject matter it is incumbent on counsel to discriminately select his activities consistent with the requirements of an engagement, but with a realistic awareness that a case may not be worth what the meter will tally up to if left to run without restraint.
Browning v. Peyton, 123 F.R.D. 75, 78 (S.D.N.Y. 1988).
Mindful of these teachings, this court has carefully scrutinized each entry on the plaintiff's itemized bills. "Courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described."Appliances, Inc. v. Yost, 186 Conn. 673, 680 (1982). Appellate litigation is a particularly labor-intensive endeavor. The appellate attorney often must first become thoroughly familiar with a file with which she has hitherto had no involvement. Such was the case in Ashton I and Ashton II. The first commandment of the appellate lawyer remains: Know The Record. The briefs in question were ably drafted and properly employed the useful tool of the attached appendix. Practice Book §§ 4065(3), 4068, 4069. Still, the bills for services are manifestly excessive. While it would unduly lengthen this opinion to tabulate every item which is billed excessively, suffice it to say that neither the parties' contract, nor the case law nor the Rules of Professional Responsibility sanction billing the defendant 1/10 of an hour (here, $22.50) for reviewing the Appellate Court calendar, for reviewing an order denying a motion to reconsider en banc, or for "attempted telephone call to client."[3]
There is probable cause that the plaintiff will recover a judgment against the defendant for the sum of $16,970.78, and the plaintiff's application for a prejudgment remedy is granted in that amount upon the filing of a bond in that amount, with surety.
BY THE COURT
Levin, J.