[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action sounding in breach of contract to collect attorney's fees for services rendered to the defendant from September, 1994 through September, 1997 in the amount of $10,798.00. The plaintiff additionally seeks interest and attorney's fees based on a so-called "installment payment agreement" dated July 21, 1997.
Defendants, husband and wife, conceding that the plaintiff CT Page 4673 performed certain legal services for them, have left plaintiff to his proof, denied the existence of any written agreement and filed special defenses basically claiming that the installment agreement was obtained by coercion, undue influence and misrepresentation. Defendants further filed a counterclaim alleging inter alia infliction of emotional damage and violation of CUTPA.
Trial before this court took place on June 18, August 5 and August 17, 1999, with subsequent briefs filed in September, 1999 and by agreement through February 14, 2000. Defendants did not pursue their counterclaim and offered no evidence to support either of the two counts. On September 14, 1999, plaintiff filed an amended claim for his attorney's fees in conjunction with this trial. The principal contentions of the defendants at trial centered on alleged overcharging by the plaintiff, his alleged ethical violations and the validity of the installment agreement.
I.
The evidence at trial can be summarized as follows: In 1992, defendants found themselves in financial difficulties, facing the imminent foreclosure of their home, with a law date set in September, 1992. They were referred to plaintiff attorney by a financial consulting service which came to their attention through an advertisement. They paid a consulting service $1,500.00 with the understanding that they would be reimbursed or receive credit for this payment when legal services were actually performed.
On August 20, 1992 plaintiff and defendants signed a retainer agreement for a Chapter 13 filing, specifying a lump price but stating that "additional fees may be charged." Early in 1994, defendants gave plaintiff $10,000.00 with the understanding that it would be used to "pay down" the delinquent mortgage balance so it could be refinanced. In fact, plaintiff used the money for payments to the Bankruptcy Trustee, current mortgage installments and to pay other liens against the property, leaving a balance of $4,200.00. The parties agreed on April 8, 1999 that $2,100.00 could be applied to plaintiff's legal fees which had been adjusted downward from $8,907.75 to $4,200.00 and $2,100.00 was returned to the defendants. Plaintiff continued billing defendants for post confirmation services, and in January, 1997, advised defendants that the bank holding the mortgage had revived foreclosure proceedings. In the meantime, relations between plaintiff and defendants had deteriorated. On July 24, 1997, facing a court hearing on a renewed motion to reopen the foreclosure, plaintiff met defendants in court, confronted them with the installment agreement and told them that CT Page 4674 unless they signed it then and there he would not represent them and they would lose their home. They signed the agreement, the foreclosure action was reopened and an agreement was eventually worked out through the refinancing of the delinquent mortgage.
The installment agreement in contention recites an array of legal services performed by plaintiff, commencing September, 1994, fixing the amount of fees previously incurred and the balance owed as of June 28, 1997 at $5,208.00, providing installment payments of $350.00 monthly, with provisions for acceleration and attorney's fees and interest if any installment was more than five days delinquent. According to plaintiff's records, defendants made irregular payments thereafter to plaintiff totaling $1,826.00, with the last payment on October 14, 1997. Subsequent to June 28, 1997, plaintiff claims to have performed additional services for the defendants which according to his statement, amount to $7,895.50, which after crediting payments made by plaintiff and a computer error, left a balance due plaintiff of $10,789.00.
II.
Defendants claim that plaintiff committed a number of ethical violations, which should bar or reduce any recovery by him.
1. Defendants claim that there was a fee splitting arrangement by plaintiff with the financial consulting firm that referred the defendants to the plaintiff Plaintiff denied any connection with the consulting firm but told defendants he would try to get some of the $1,500.00 back. Defendants have failed to sustain their burden of proof that any fee-splitting arrangement was actually entered into by the plaintiff. Furthermore, this arrangement was never raised by the defendants in the pleadings.
2. Although, at trial, defendants claimed that they had been shortchanged by plaintiff's handling of the $10,000.00 they gave him in 1994 and the funds were not used as they directed, they have failed to prove any significant improprieties surrounding the $10,000.00 given by them to plaintiff or that they should be credited with any amount from the sum to reduce the fee claims of plaintiff. In fact, they admitted that they agreed to divide the $4,200.00 remaining from that sum. Much of their testimony was vague and sometimes contradictory.
3. As to the installment agreement, sufficient evidence was introduced to persuade this court that elements of the installment agreement are suspect and unenforceable because of the circumstances under which it was presented and signed. Plaintiff claimed he sent a copy to CT Page 4675 defendants in June 1997, but they denied receipt. When an attorney prepares a document for his benefit, presents it to his clients for the first time. in a court house, where a motion to reopen foreclosure of their home has been scheduled, and threatens to withdraw his services if the document is not signed immediately, thereby holding over their heads the loss of their home, this amounts to duress. No opportunity was given to defendants to consult with another attorney. Contracts made by an attorney with an existing client are scrutinized by our courts with great care, and if there are any doubts they will be resolved in favor of the client. McKnightv. Gizze, 107 Conn. 229, 235 (1928); Di Francisco v. Goldman,127 Conn. 385, (1940). Plaintiff cannot be permitted to recover legal fees on the basis of this installment agreement.
III.
Although plaintiff's complaint bases his claim for legal fees primarily on the installment agreement, his claim for relief "such other and further relief as this court deems appropriate" is broad enough to include a claim based on quantum meruit, at least where no statutes have been violated. Marcus v. DuPerry, 223 Conn. 484 (1992);Burton v. Browd, 25 CLR 91 Sup. Ct. J.D. Danbury (July 7, 1999, Radcliffe, J.). Even though no formal amendment was made by plaintiff to recover on quantum meruit, the trial was conducted by both sides as a proceeding to test the value of plaintiff's services, defendants admitted receiving some benefits and this case falls within the broad coverage of Practice Book Sec. 10-63.
The legal services performed by plaintiff for the defendants consisted, in addition to representing them in the foreclosure action, filing for Chapter 13 petitions in bankruptcy court, the first in September, 1992 and the second in June, 1993, the latter subsequently being converted to a Chapter 7, and later helping to arrange the refinancing of their home. These services were substantial and successful and resulted in the retention by the defendants of their home and the discharge of a substantial portion of their debts. On the other hand, while the plaintiff rendered valuable legal services to the defendants, the bulk of the services were rendered prior to the date of the installment agreement and many of the charges made after that date seem to be repetitive, unnecessary or in the nature of collection efforts from the defendants. For example, plaintiff's time records include charges for preparing the installment agreement and a security mortgage which was never used. Furthermore, plaintiff billed defendants at a hourly rate of $165.00, although there was no written or oral agreement for such a rate. It is noted that in the CT Page 4676 amended claim to recover trial attorney's fees, his attorney has billed at an hourly rate of only $150.00. Finally, plaintiff received other fees from the defendants which are impossible to determine from the evidence presented, including $5,000.00 from the bankruptcy plan in the second bankruptcy proceeding.
Careful review has been made of Rule 1.5 of the Rules of Professional Conduct requiring a lawyer's fee to be reasonable and listing the factors to be considered. Since quantum meruit requires review of equitable factors, this court has taken into consideration some of the questionable ethical actions of the plaintiff in this case although no statutory violations have been found. Cf. Silver v.Jacobs, 43 Conn. App. 184 (1996). In arriving at a reasonable fee, given all the circumstances, it is not necessary to tabulate each questionable item in plaintiff's time records which have been challenged; sufficient to say, some items are inappropriately billed. See Gordon Scab v. Ashton, Sup. Ct. J.D. Fairfield at Bridgeport, No. CV 95 03205 92S (March 20, 1995, Levin, J.).
Under all the circumstances, plaintiff's claim for interest and attorney's fees is rejected.
Judgment is entered for the plaintiff in the amount of $6,000.00.
Judgment is entered for the plaintiff on defendants' counterclaim.
 Wagner, J. Judge Trial Refree