IRENE SANDFORD *v.* WATSON B. METCALFE ET AL.

GRETCHEN PULVERMANN, EXECUTRIX (ESTATE OF MARY JANE WATSON) *v.* WATSON B. METCALFE ET AL.
(AC 29467)

Flynn, C. J., and Lavine and Pellegrino, Js.

Argued April 18—officially released July 18, 2008*

*Daniel W. Moger, Jr.*, with whom was *Joyce H. Young*, for the appellants (defendants).

*James A. Fulton*, for the appellees (plaintiffs).

---

* July 18, 2008, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

PELLEGRINO, J. This is an appeal from the judgments of the trial court sustaining two appeals from the Probate Court for the district of Greenwich, which refused to authorize a distribution to the plaintiffs, Irene Sandford and Gretchen Pulvermann, in accordance with the will of Mary Jane Watson (decedent). We affirm the judgments of the trial court.

The dispute giving rise to this appeal concerns the distribution of the assets of the estate of the decedent, who died on February 10, 2000. Five days before the decedent's death, on February 5, 2000, she asked Sandford, a friend who lived in Armonk, New York, to come to her house in Greenwich.[1] Sandford, an attorney licensed to practice law in New York but not in Connecticut, arrived at the decedent's home after work that evening. Sandford found the decedent in her bed and suggested that the decedent should be seen by a physician.

The decedent asked Sandford to draft her a new will, continually insisting that she would discuss no other subject until Sandford did as she requested. The decedent's prior will had been executed in December, 1962, and left her estate to her now deceased mother and husband with a contingent beneficiary of her cousin, Watson B. Metcalfe. Sandford explained to the decedent that she was not licensed to practice law in Connecticut and, upon learning that the decedent wanted to name her as a beneficiary, told the decedent that she could not prepare the will. The decedent, however, insisted that she prepare the will. Sandford relented and complied with the decedent's wishes by handwriting a will that, in accordance with the decedent's instructions, left the estate in equal shares to Sandford and to the

---

[1] Sandford was related to the decedent's deceased husband, and she and her family were friendly with the decedent.

decedent's handyman, Robert Peterson, who was also present in the decedent's home that evening. No provision was made in the will for residuary beneficiaries. After the will was signed and witnessed, the decedent was taken to a hospital where she died five days later.[2]

After the decedent's death, both the 1962 will and the handwritten will dated February 5, 2000, were offered to the Probate Court for the district of Greenwich for probate. The heirs at law[3] attempted to prevent the handwritten will from being admitted to probate, making the same public policy and undue influence arguments that they are asserting in this appeal. The Probate Court, *Hon. David R. Tobin*, found that the February 5, 2000 will was the decedent's last will and testament and admitted it to probate. The plaintiffs attempted to appeal from Judge Tobin's decision, but that appeal subsequently was dismissed as untimely. No appeal was taken from the trial court's judgment dismissing the probate appeal.[4]

Pulvermann was appointed as executrix of the estate, as set forth in the decedent's February, 2000 will. In fulfilling her duties, Pulvermann submitted an accounting to the Probate Court, calling for an equal distribution of the proceeds of the estate to Sandford and Peterson in accordance with the provisions of the will. At that

[2] There is no claim made in this appeal that the will was invalid because it did not comply with our statutes relating to the number or competency of witnesses.

[3] The defendants in this appeal, Metcalfe, Julian G. Blake, Vivienne McCandless and Viviene M. Semler, executrix of the estate of Barbara F. Mortimer, are the heirs at law.

[4] On September 18, 2001, Metcalfe instituted a second probate appeal pursuant to the accidental failure of suit statute. The court, *Mintz, J.*, granted the motion to dismiss of Pulvermann, Sanford and Peterson. This court subsequently affirmed that judgment; *Metcalfe* v. *Sandford*, 81 Conn. App. 96, 99–100, 837 A.2d 894 (2004); and our Supreme Court subsequently affirmed the decision, albeit on different grounds. *Metcalfe* v. *Sandford*, 271 Conn. 531, 533, 858 A.2d 757 (2004).

time, Metcalfe, an heir at law, applied to the Probate Court for an order of distribution, claiming that the bequest to Sandford failed by operation of law, and, because the will did not have a residuary clause, the bequest to Sandford should pass under the laws of intestacy to the decedent's heirs, including himself.

The order for distribution filed by Pulvermann and the order for distribution filed by Metcalfe were presented to the Probate Court. *Hon. Daniel F. Caruso*, serving as the acting judge of the Probate Court for the district of Greenwich, held that the bequest to Sandford failed by operation of law and ordered that her bequest pass in accordance with the laws of intestacy to the decedent's heirs at law. Pulvermann and Sandford thereafter filed separate appeals from Judge Caruso's decision to the Superior Court. The appeals subsequently were consolidated, and the court, *R. Robinson, J.*, sustained the appeals. The heirs at law have filed this appeal.

At the outset, we take a moment to clarify what is at issue in this appeal. It is the claim of the heirs at law that because the will drafted by Sandford constituted the unauthorized practice of law and was violative of the Rules of Professional Conduct, which prohibit an attorney from preparing any instrument giving herself a substantial gift; Rules of Professional Conduct 1.8 (c); Sandford's conduct violated public policy, and this court must remedy that violation. We conclude, however, that the question of whether Sandford engaged in the unauthorized practice of law or violated rule 1.8 (c) of the Rules of Professional Conduct was not decided in the action from which this appeal arises.[5] Accordingly,

---

[5] We acknowledge that public policy, as reflected by rule 1.8 (c) of the Rules of Professional Responsibility, precludes an attorney from drafting a will in which she is named as a beneficiary. See 2 Restatement (Third), The Law Governing Lawyers § 127, comment (b) (2000) ("[a] client's valuable gift to a lawyer invites suspicion that the lawyer overreached or used undue influence"); see also *Dinan* v. *Marchand*, 279 Conn. 558, 560 n.1, 903 A.2d 201 (2006) (defining undue influence). Although the violation of this prohibi-

that aspect of the claim by the heirs at law is not an issue before us and we need not address it. See *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 589 n.9, 830 A.2d 164 (2003) ("[b]ecause our review is limited to matters in the record, we will not address issues not decided by the trial court" [internal quotation marks omitted]).

Moreover, because the heirs at law did not file a timely appeal from Judge Tobin's decision admitting the February 5, 2000 will to probate, we are presented with a duly admitted will that provides for a distribution to Sandford. The issue before this court, therefore, is not whether there should be a distribution in accordance with the will, because that issue was decided by the decision of the Probate Court and unsuccessfully appealed, but whether there should be a forfeiture of the bequest to Sandford, the attorney who drafted the will, on the basis of public policy. We conclude that there should not be a forfeiture.

We begin by identifying the relevant legal principles and standard of review that govern the resolution of the defendants' appeal. "An appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court. . . .

tion does not constitute an irrebutable presumption of undue influence, it does shift the burden to the attorney to show the validity of the bequest. *McKnight* v. *Gizze*, 107 Conn. 229, 235, 140 A. 116 (1928). "So strict is the rule on this subject, that dealings between an attorney and his client are held, as against the attorney, to be prima facie fraudulent, that is to say, the burden is not upon the client to establish fraud and imposition, but the burden rests upon the attorney to show fairness, adequacy and equity." (Internal quotation marks omitted.) Id.

"The function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo. . . . Thereafter, upon consideration of all evidence presented on the appeal which would have been admissible in the probate court, the superior court should exercise the same power of judgment which the probate court possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the probate court." (Citations omitted; internal quotation marks omitted.) *State* v. *Gordon*, 45 Conn. App. 490, 494–95, 696 A.2d 1034, cert. granted on other grounds, 243 Conn. 911, 701 A.2d 336 (1997) (appeal dismissed October 27, 1998).

Because the facts underlying this appeal are undisputed, the conclusion of the trial court that the testamentary gift from the decedent to Sandford did not violate public policy involves a question of law, which we review under the plenary standard of review. See *Webster Bank* v. *Zak*, 259 Conn. 766, 773, 792 A.2d 66 (2002).

"The law governing descent and distribution emanates from the legislature and is purely statutory. . . . The legislature has, by statute, carved out exceptions to the statutes governing descent and distribution to deprive an ostensibly rightful heir, falling within the ambit of those exceptions, of an otherwise lawful inheritance. Under [General Statutes (Rev. to 1985)] § 45-273a (a) [now § 45a-436 (g)][6] a person who, without sufficient

---

[6] General Statutes § 45a-436, entitled, "Succession upon death of spouse. Statutory share," provides in relevant part: "(a) On the death of a spouse, the surviving spouse may elect, as provided in subsection (c) of this section, to take a statutory share of the real and personal property passing under the will of the deceased spouse. The 'statutory share' means a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, after the payment of all debts and charges against the estate. The right to such third shall not be defeated by any disposition of the property by will to other parties. . . .

cause, abandons his or her spouse is foreclosed from receiving a statutory share of the estate of the deceased spouse. Under [General Statutes (Rev. to 1985)] § 45-279 (a) [now § 45a-447][7] a person finally convicted of murder is precluded from inheriting any part of the estate of the deceased victim . . . ." (Citations omitted.) *Hotarek* v. *Benson,* 211 Conn. 121, 125–28, 557 A.2d 1259 (1989). There is, however, no statute barring an attorney who drafted a testamentary instrument from inheriting by the instrument she drafted.

Because there is no statute barring a distribution to Sandford, the heirs at law ask us to use our equitable

"(g) A surviving husband or wife shall not be entitled to a statutory share, as provided in subsection (a) of this section, or an intestate share, as provided in section 45a-437, in the property of the other if such surviving spouse, without sufficient cause, abandoned the other and continued such abandonment to the time of the other's death. . . ."

[7] General Statutes § 45a-447, entitled, "When person guilty of killing another to inherit from or receive property or insurance proceeds as beneficiary of victim," provides in relevant part: "(a) A person finally adjudged guilty, either as the principal or accessory, of any crime under section 53a-54a or 53a-54b, or in any other jurisdiction, of any crime, the essential elements of which are substantially similar to such crimes, shall not inherit or receive any part of the estate of the deceased, whether under the provisions of any act relating to intestate succession, or as devisee or legatee, or otherwise under the will of the deceased, or receive any property as beneficiary or survivor of the deceased; and such person shall not inherit or receive any part of the estate of any other person when such homicide or death terminated an intermediate estate, or hastened the time of enjoyment. With respect to inheritance under the will of the deceased, or rights to property as heir, devisee, legatee or beneficiary of the deceased, the person whose participation in the estate of another or whose right to property as such heir, devisee, legatee or beneficiary is so prevented under the provisions of this section shall be considered to have predeceased the person killed. With respect to property owned in joint tenancy with rights of survivorship with the deceased, such final adjudication as guilty shall be a severance of the joint tenancy, and shall convert the joint tenancy into a tenancy in common as to the person so adjudged and the deceased but not as to any remaining joint tenant or tenants, such severance being effective as of the time such adjudication of guilty becomes final. When such jointly owned property is real property, a certified copy of the final adjudication as guilty shall be recorded by the fiduciary of the deceased's estate, or may be recorded by any other interested party in the land records of the town where such real property is situated."

powers to prevent such a distribution. We cannot do so. "Even if the omission of such a statute were the result of legislative oversight or neglect, we have no power to supply the omission or to remedy the effect of the neglect. . . . [A]ny qualification [of the law of descent and distribution] pronounced by this court would be a judicial grafting of public policy restrictions on an explicit statutory provision. . . . The authorities make clear that judicial tribunals have no concern with the policy of legislation and they cannot engraft upon the provisions of the statutes of descent and distribution an exception to bar an inheritance. . . . The statutes cannot be changed by the court to make them conform to the court's conception of right and justice in a particular case. . . . To avoid trenching on legislative ground, the court must take the view that if the legislature had intended such an exception from the statutes as is sought in this case, it would have said so." (Citations omitted; internal quotation marks omitted.) Id., 128–29.

Although we agree that it is ill-advised, as a matter of public policy, for an attorney to draft a will in which she is to receive a bequest, in the absence of statutory provisions to the contrary, there is no bar against the right of Sandford to inherit from the decedent's estate under the statutes governing descent and distribution. See id.; *Bird* v. *Plunkett*, 139 Conn. 491, 500–502, 95 A.2d 71 (1953).[8] If the law is to be changed to make provision for the situation at hand, it is for the legislature to make the change, not the court.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[8] Moreover, the public policy concerns that the defendants raise are protected adequately by the statewide grievance committee, the statewide bar counsel and General Statutes § 51-88, which prohibits and prescribes penalties for the unauthorized practice of law.