WALTER TWACHTMAN, JR. *v.* FRANK HASTINGS ET AL.
(AC 17924)

Foti, Landau and Hennessy, Js.

Argued December 14, 1998—officially released April 13, 1999

*Neil F. Murphy, Jr.*, with whom was *P. Jo Anne Burgh*, for the appellant (named defendant).

*Richard M. Quinlan*, with whom, on the brief, was *Walter Twachtman, Jr.*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant, Frank Hastings, appeals from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, Walter Twachtman, Jr., on a mortgage Hastings gave to Twachtman. The mortgage secured a note for payment for professional services by Twachtman to Hastings in various legal matters from 1986 to 1990. On appeal, Hastings claims that (1) the trial court improperly failed to apply the standards set out in *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 635 A.2d 798 (1994), in ascertaining whether Twachtman violated his fiduciary duty to Hastings and (2) the trial court's findings as to several issues were clearly erroneous. We affirm the judgment of the trial court.

The facts are substantially undisputed and may be summarized as follows. From February 5, 1986, until May, 1989, Twachtman represented Hastings in various legal proceedings. The parties' initial retainer agreement, signed on February 5, 1986, provided, inter alia, that Hastings would be billed for services at an hourly rate of $95. The parties understood that the bill would be paid in full at the successful conclusion of the legal proceedings, specifically at the conclusion of a lawsuit undertaken to enforce a judgment in favor of Hastings against Arthur Normand in a prior lawsuit (*Normand I*), which involved an option agreement to purchase certain property. Because the postjudgment

proceedings to enforce the judgment in *Normand I* were unsuccessful, Twachtman commenced a second lawsuit on Hastings' behalf (*Normand II*), which was tried to the trial court and resulted in a judgment in favor of Hastings for specific performance on an option agreement. Normand appealed *Normand II*, which Twachtman successfully defended on Hastings' behalf.[1]

On October 6, 1988, prior to the *Normand II* decision, the parties entered into a letter agreement, recognizing that the total unpaid legal fees rendered and billed through July, 1988, were $32,644.52, which included $24,644 for Twachtman's services in *Normand II*, and that Twachtman "was entitled to an attorney's lien [for the total amount due] against the funds in [Twachtman's] possession and collected on [Hastings'] behalf." The parties agreed to a compromise whereby $15,000 would be paid to Twachtman from proceeds acquired as a result of separate legal proceedings, which Twachtman was holding on Hastings' behalf, and the remainder of the proceeds would be paid to Hastings. The balance of unpaid legal fees, $17,644.52, was to be secured by a mortgage and note at 8 percent interest. Twachtman agreed not to demand payment on the note until the *Normand II* appeal was resolved. Hastings signed the agreement, which included a statement that Hastings had read the terms of the agreement and understood and accepted those terms.

At the conclusion of *Normand II*, Hastings experienced difficulty obtaining financing for the purchase of the Normand property and, thereafter, Twachtman and Hastings entered into another letter agreement in September, 1989. As a result, Hastings paid $10,000 toward Twachtman's billings of $34,895.25. The balance was secured by a mortgage and note at 15 percent interest,

---

[1] See *Natural Harmony, Inc.* v. *Normand*, 211 Conn. 145, 558 A.2d 231 (1989).

which was to be paid on or before December 31, 1989. The language in the earlier agreement was restated, specifying that Hastings was free to terminate the attorney-client relationship at any time but that, if Hastings discharged Twachtman without cause, Twachtman could demand payment. The agreement also provided that it superseded all prior agreements. Again, Hastings signed the document, acknowledging that he understood and accepted its terms.

Not until December 6, 1989, in a letter to Twachtman, did Hastings express any dissatisfaction with the quality of Twachtman's services and the amount of his legal fees. Thereafter, Twachtman, believing that Hastings' dissatisfaction was a ruse to avoid payment of the bill and that Hastings did not intend to pay the balance due, gave Hastings notice that he would file the mortgage on the land records within ten days in accordance with the agreement between the parties. Twachtman also advised Hastings that because they were now in an adversarial position, he could not represent Hastings in the only remaining active file. In a letter dated February 6, 1990, however, Hastings proposed that Twachtman manage the appeal in that case, a class action suit in which Hastings was one of the plaintiffs, and proposed a separate retainer agreement for a fee of not more than $6000 to be secured by a mortgage on two of the lots purchased at the Normand closing. After some modifications, the agreement was signed by the parties and Twachtman defended the appeal to its conclusion when the trial court's judgment against the plaintiffs was affirmed in *Cyr* v. *Coventry*, 216 Conn. 436, 582 A.2d 452 (1990).[2]

---

[2] At trial, Twachtman testified that the fees charged for representation in the *Cyr* v. *Coventry*, supra, 216 Conn. 436, appeal were paid and, therefore, were not the subject of the present lawsuit.

Twachtman commenced this action to foreclose the mortgage in January, 1995, and a judgment of foreclosure by sale was rendered by the trial court.[3] This appeal followed.

I

Initially, Hastings argues that the trial court ignored the standards set out in *Konover Development Corp.* v. *Zeller*, supra, 228 Conn. 206, as it applied to the fiduciary relationship between the parties. Hastings maintains that under *Konover*, the court was required to evaluate "(a) whether the plaintiff had made full and frank disclosure of the relevant information, (b) whether the consideration received by the defendant pursuant to the letter [agreements, notes and mortgages] was adequate, (c) whether the defendant had access to competent, independent advice with regard to the letter [agreements], and (d) the relative degrees of sophistication and bargaining power between the parties with respect to the letter [agreements]." Id., 217–18. In addition, Hastings asserts that the trial court, rather than holding Twachtman to the burden, as set forth in *Konover*, of proving by clear and convincing evidence that he dealt fairly with Hastings, improperly placed on Hastings the burden of proving Twachtman's breach of his fiduciary duty.

Twachtman maintains that *Konover* is distinguishable on its facts and, therefore, does not apply. Specifically, Twachtman suggests that the fact that *Konover*

---

[3] We note that, on August 12, 1996, Hastings filed a grievance against Twachtman that was considered by the statewide grievance committee. The committee found no misconduct on the part of Twachtman that warranted disciplinary action. The committee dismissed the complaint on January 17, 1997, without prejudice to Hastings' right to refile it "should the findings of the trial court in which the dispute between [Hastings] and Twachtman] is currently pending evidence misconduct on the part of [Twachtman]."

Moreover, we note that none of the trial court's findings with regard to Twachtman's compliance with the Rules of Professional Conduct was challenged in this appeal.

involved a dispute between a general partner and a limited partner, where the general partner sought damages for the breach of an agreement to reimburse the general partner for out-of-pocket expenses incurred in developing plans for a proposed shopping mall, makes it factually distinct from the case before us. Twachtman characterizes this case as "a fee dispute between an attorney and his client that arose subsequent to the acquisition of the res [the acquisition of the Normand property by Hastings], which gave rise to the relationship between the attorney and the client in the first place."[4]

We agree with Twachtman that *Konover* is inapplicable to the case before us. In *Konover*, the parties entered into a letter agreement whereby the partnership agreed, inter alia, that the plaintiff, in its sole discretion, could terminate the partnership if it determined that the project involving a proposed shopping mall was no longer feasible. Id., 211. In addition, the defendant would own all of the partnership assets and would be obligated to reimburse the plaintiff for all of its partnership expenditures. Id., 211–12. Thereafter, the plaintiff decided that the project was no longer feasible, informed the defendant of its decision and formally requested reimbursement for its out-of-pocket expenses, which the defendant did not acknowledge. Id., 213. The plaintiff brought a breach a contract claim against the defendant. Id. In response, the defendant denied any debt owed to the plaintiff and filed a counterclaim for breach of fiduciary duty. Id.

---

[4] Twachtman posits that "[t]his case might have been similar to the *Konover* case if the dispute in *Konover* was [about] the fee that was due the general partner for services performed to the partnership." To be fair, Twachtman's brief was filed prior to our Supreme Court's decision in *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 717 A.2d 724 (1998). In *Beverly Hills Concepts, Inc.*, the court clearly applied *Konover* in its analysis, holding that the trial court improperly found a junior associate in the law firm liable for breach of a fiduciary duty.

The court in *Konover* held that the plaintiff's decisions regarding the project's feasibility and withdrawal from the partnership, pursuant to their letter agreement, were impressed with a fiduciary duty. Id., 217. The court noted that it was not convinced that "the terms of a partnership agreement, even given due deference to the provisions of freedom of contract, necessarily negate the fiduciary relationship that inheres in the partnership." Id., 225–26. The better choice, the court noted, was to "maintain the fiduciary relationship, but to make clear that, in determining whether the general partner has dealt fairly with the limited partner, the factfinder should take into account all of the circumstances surrounding their business relationship." Id., 226.

In the present case, it is undisputed that Twachtman owed a fiduciary duty to Hastings. The issue, however, is whether that fiduciary relationship existed subsequent to the acquisition of the res that gave rise to the attorney-client relationship between the parties and, thus, dictated the application of *Konover*. Specifically, it was not the acquisition of the Normand property that gave rise to the dispute; it was the legal fees owed to Twachtman who performed legal services to accomplish Hastings' objective, which was to acquire the property. In the present case, unlike the fiduciary relationship that existed between the partners in *Konover* who were engaged in a joint business venture, Hastings specifically agreed that he would pay Twachtman for his legal services upon the successful completion of *Normand II* on or before December 31, 1989. The attorney-client relationship between the parties ceased to exist at the conclusion of the last active file, *Cyr* v. *Coventry*, supra, 216 Conn. 436. The action to foreclose on the mortgage attached to the Normand property occurred in 1995, well after the attorney-client relationship involving any active case files had concluded and after Hastings indicated that he was not

going to pay the legal fees that were due. This case, therefore, unlike *Konover*, does not involve a breach of fiduciary duty but, instead, involves a breach of contract.

The trial court found that the "letter agreement of October 6, 1988, and the mortgage documents executed pursuant to its terms . . . [indicate that] the plaintiff's intention was merely to acquire security for the payment of his fees after the *Normand* litigation had been concluded, and the mortgage, which was not to be enforced until that time, was a permissible security interest . . . for the purpose of securing the payment by the client of fees due the attorney." The trial court also determined that the agreement of September 7, 1989, was "the result of free assent of the parties making it . . . based on the common law definition of duress under Connecticut law, because it was not the product of any wrongful conduct on the part of the plaintiff and he honestly and reasonably believed himself to be entitled to the contractual conditions contained therein."

"[O]ur function [on appeal] is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 14, 664 A.2d 719 (1995). Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous.

. . . *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." (Internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 58, 717 A.2d 724 (1998).

Hastings seeks to engraft the standards applicable to attorney-client relationships onto a fee dispute outside the res that formed the basis for that attorney-client relationship. Essentially, Hastings seeks to impose a breach of fiduciary duty in Twachtman's assertion of his legal right. Under the circumstances of this case, we decline that invitation.

## II

Hastings finally claims that regardless of the applicability of the *Konover* standards, the trial court's findings were clearly erroneous. Specifically, Hastings claims that the trial court improperly found that (1) the interest rate charged by Twachtman on the September, 1989 note was reasonable and (2) Twachtman had not misapplied any of the sum paid by Hastings against the note and mortgage and in awarding damages calculated on the basis of such misapplication. Hastings claims that the trial court improperly found Twachtman more credible than Hastings.[5] While this claim is couched as a challenge to the trial court's factual determinations, actually, Hastings asks this court to review the credibility of the parties. This we will not do.

It is axiomatic that "[t]he trial court, as trier of fact, determined who and what to believe and the weight to be accorded the evidence. The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the

---

[5] In his brief, Hastings states that "[t]he record clearly reflects that the court found the plaintiff to be extremely credible and the defendant to be less so."

670

weight to be accorded to their testimony." (Internal quotation marks omitted.) *Shearn* v. *Shearn*, 50 Conn. App. 225, 231, 717 A.2d 793 (1998). As such, the trial court is free to accept or reject, in whole or in part, the testimony offered by any witness, having the unique opportunity to observe the witnesses firsthand and assess their credibility. See *Baretta* v. *T & T Structural, Inc.*, 42 Conn. App. 522, 527, 681 A.2d 359 (1996). "We have constantly held to the rule that we will not judge the credibility of witnesses or substitute our judgment for that of the trial court. We fail to see a reason why we should do so here." *Shearn* v. *Shearn*, supra, 231.

The weight of the evidence and the credibility of the witnesses were for the trial court to determine. We therefore will not disturb its judgment.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.

