CHRISTOPHER C. NOBLE *v.* CARL E. WHITE ET AL.
(AC 20809)

Spear, Mihalakos and Flynn, Js.

Argued June 7—officially released October 2, 2001

*Christopher C. Noble,* pro se, the appellant (plaintiff).

*Robert P. Hanahan,* for the appellees (defendants).

*Opinion*

SPEAR, J. The plaintiff, Christopher C. Noble, appeals from the judgment of the trial court, rendered following a trial to the court, awarding him $6000 in legal fees for his representation of the defendants, Carl E. White and Kathryn White. The plaintiff's sole claim is that the court improperly found that the attorney's fee agreement was void and unenforceable. We reverse the judgment of the trial court.[1]

The court found the following facts. In 1992, the defendants found themselves in financial difficulties, facing the imminent foreclosure of their home, with a law day set in September, 1992. A financial consulting service, which had come to their attention through an advertisement, referred them to the plaintiff.

On August 20, 1992, the plaintiff and the defendants signed a retainer agreement for a chapter 13 filing, specifying a lump sum fee, but stating that "additional fees may be charged." Several years later, after many transactions relating to the defendants' financial affairs, the plaintiff continued billing the defendants for postconfirmation services. In January, 1997, the plaintiff advised the defendants that the bank holding their mortgage had revived foreclosure proceedings. In the meantime, relations between the plaintiff and the defendants had deteriorated.

On July 24, 1997, facing a court hearing on a renewed motion to reopen the foreclosure proceedings, the plaintiff met the defendants in court, confronted them with an installment agreement and told them that unless

---

[1] The defendants filed a two count counterclaim for intentional infliction of emotional distress and for an alleged violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The trial court rendered judgment for the plaintiff on the counterclaim, and the defendants did not appeal. Our reversal of the judgment on the complaint does not affect the trial court's judgment on the counterclaim.

they signed it then and there, he would not represent them and they would lose their home. They signed the agreement, the foreclosure action was reopened and an agreement was eventually worked out through the refinancing of the delinquent mortgage.

The installment agreement recited an array of legal services performed by the plaintiff commencing in September, 1994, and fixed the amount of fees previously incurred and the balance owed as of June 28, 1997, at $5208. The agreement also provided for installment payments of $350 monthly, with provisions for acceleration, attorney's fees and interest if any installment was more than five days delinquent. According to the plaintiff's records, the defendants thereafter made irregular payments to the plaintiff totaling $1826, with the last payment on October 14, 1997. Subsequent to June 28, 1997, the plaintiff claims to have performed additional services for the defendants that left a balance due the plaintiff of $10,789.

The court concluded that there was sufficient evidence to find that the installment agreement was suspect and unenforceable because of the circumstances under which it was presented and signed. The court found that the plaintiff claimed that he sent a copy to the defendants in June, 1997, but that they denied receipt. The court ruled: "When an attorney prepares a document for his benefit, presents it to his clients for the first time in a courthouse, where a motion to reopen foreclosure of their home has been scheduled, and threatens to withdraw his services if the document is not signed immediately, thereby holding over their heads the loss of their home, this amounts to duress. No opportunity was given to defendants to consult with another attorney. Contracts made by an attorney with an existing client are scrutinized by our courts with great care, and if there are any doubts they will be resolved in favor of the client. *McKnight* v. *Gizze*, 107

Conn. 229, 235 [140 A. 116] (1928); *DiFrancesco* v. *Goldman,* 127 Conn. [387, 16 A.2d 828] (1940). The plaintiff cannot be permitted to recover legal fees on the basis of this installment agreement." Although the court found the installment agreement unenforceable, it granted relief based on quantum meruit and awarded the plaintiff $6000. This appeal followed.

The plaintiff's sole claim is that the court improperly concluded that the installment agreement was obtained under duress and, therefore, was void and unenforceable. Specifically, he argues that the court's conclusion of duress is based on clearly erroneous fact-finding. We agree.

"[O]ur function . . . is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Twachtman* v. *Hastings,* 52 Conn. App. 661, 668, 727 A.2d 791, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999).

"Contracts between attorney and client fall naturally into at least two categories: (1) those made before the relationship of attorney and client has commenced or after the relationship has terminated; and (2) those made during the relationship. The agreement between

the plaintiff and the defendant, whatever it was, was made during the existence of the relationship. Courts of equity scrutinize transactions made between attorney and client during the existence of the relationship with great care and if there are doubts they will be resolved in favor of the client. *McKnight* v. *Gizze*, [supra, 107 Conn. 235]; *Mills* v. *Mills*, 26 Conn. 213, 219 [1857]. Nevertheless, an attorney is not prohibited from contracting with his client respecting his fees, and a contract thus made after the commencement of the relationship of attorney and client is not per se void but will by reason of the confidential nature of the relationship be closely scrutinized by the court. No undue advantage can be taken of the relationship of attorney and client in order to procure such a contract; but where the parties are free to contract, their agreement should not be set aside or the agreed compensation withheld unless fraud has been perpetrated, undue influence exerted, material facts affecting the subject matter misrepresented or suppressed, or advantage taken of a position of confidence and trust to obtain an unconscionable advantage over the party, in which case a court of equity may grant relief from such oppression, and the attorney will be confined to a reasonable charge for compensation without regard to the attempted fixation of the value of his services." (Internal quotation marks omitted.) *DiFrancesco* v. *Goldman*, supra, 127 Conn. 392–93.

The defendants claimed undue influence as a special defense. Although the court failed to rule on the defendants' undue influence special defense, it did conclude that the installment agreement was obtained under duress and, thus, was void. Although the undue influence and duress doctrines are separate and distinct, they are often treated and discussed together. See, e.g., *Jenks* v. *Jenks*, 34 Conn. App. 462, 468, 642 A.2d 31 (1994), rev'd on other grounds, 232 Conn. 750, 657 A.2d

1107 (1995). We, therefore, will treat the defendants' special defense of undue influence as one for duress.

For a party to demonstrate duress, it "must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim." *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 549–50 n.15, 661 A.2d 530 (1995). "The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party, which makes it impossible for [the party] to exercise his own free will." (Internal quotation marks omitted.) *Zebedeo* v. *Martin E. Segal Co.*, 582 F. Sup. 1394, 1417 (D. Conn. 1984).

Where a party insists on a contractual provision or a payment that he honestly believes he is entitled to receive, unless that belief is without any reasonable basis, his conduct is not wrongful and does not constitute duress or coercion under Connecticut law; see *Weiner* v. *Minor*, 124 Conn. 92, 95, 197 A. 691 (1938); *Zebedeo* v. *Martin E. Segal Co.*, supra, 582 F. Sup. 1417; and the fact that consent was given, or payment was made under protest does not establish duress. *Smedley Co.* v. *Lansing*, 35 Conn. Sup. 578, 579, 398 A.2d 1208 (1978).

The defendants claimed in their special defense that the plaintiff committed a wrongful act or threat in coercing the signing of the installment agreement on the courthouse steps on the day of a hearing on the motion to reopen the foreclosure judgment by threatening that he would not proceed with the motion unless the agreement was signed.[2]

---

[2] The defendants further claimed in support of their special defense of "duress" that the plaintiff committed a wrongful act or threat when he indicated, in writing, that a motion to withdraw had been filed in the foreclosure action, when in fact, no such motion was filed. The defendants argue that they were led to believe that the plaintiff would withdraw instead of pursuing the motion to reopen and that they would lose their home.

The plaintiff challenges the court's findings of fact that: "On July 24, 1997, facing a court hearing on a renewed motion to reopen the foreclosure, plaintiff met defendants in court, confronted them with the installment agreement and told them that unless they signed it then and there he would not represent them and they would lose their home." Specifically, the plaintiff argues that the court improperly found duress in that the installment agreement was presented for the first time in the courthouse on the day of the hearing. We agree.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Bugryn* v. *Bristol*, 63 Conn. App. 98, 103, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776 A.2d 1143 (2001).

On the basis of our review of the entire evidence, we are left with the definite and firm conviction that a mistake has been committed with regard to the court's finding that the installment agreement was presented to the defendants for the *first time* in the courthouse on the day of the hearing on the motion. The record clearly shows that the defendants received a final copy of the installment agreement by facsimile on July 22, 1997. The fact that the actual copy that the parties signed on July 24, 1997, *was* the faxed copy that the

The court's memorandum of decision failed to address this alleged wrongful act. Because the claim was raised in a special defense, the defendants had the burden to request the court to address their claim or to request an articulation as to this special defense. See *Spector* v. *Konover*, 57 Conn. App. 121, 123 n.4, 747 A.2d 39, cert. denied, 254 Conn. 913, 759 A.2d 507 (2000). The defendants failed to do so, and, therefore, we need not address it.

defendants had received on July 22, 1997, shows that the defendants were not "presented" with the installment agreement for the first time on July 24, 1997, as concluded by the court. Furthermore, the record shows that the installment agreement was signed four days before the hearing, on July 24, 1997, and the hearing was held on July 28, 1997.

There were no further allegations of wrongful acts in support of the defendants' special defense of "duress." We conclude, therefore, that the court improperly concluded that the plaintiff's installment agreement was obtained under duress and, therefore, was void and unenforceable.

The judgment for the plaintiff on the complaint is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.