PREMIER CAPITAL, INC. *v.* DAVID S.
GROSSMAN ET AL.
(AC 21469)

Dranginis, Flynn and Healey, Js.

Argued October 30, 2001—officially released February 5, 2002

*David S. Grossman,* the appellants (defendants).

*Neal L. Moskow,* with whom, on the brief, were *Frederic S. Ury* and *Deborah M. Garskof,* for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendants, David S. Grossman and Myrna S. Grossman, appeal from the judgment of the trial court rendered in favor of the plaintiff, Premier Capital, Inc., on its complaint and on the defendants' counterclaim following the court's adoption of the findings and recommendations contained in the report of an attorney fact finder (fact finder). On appeal, the defendants, who are husband and wife, claim that the court improperly accepted the fact finder's report because (1) the fact finder inappropriately allowed a computer generated record to be admitted as evidence of the defendants' debt and (2) the findings of fact of the fact finder relating to whether the defendants were entitled to prevail on their counterclaim for recoupment were inconsistent.[1] We reverse in part the judgment of the trial court on the basis of the last issue only.

The plaintiff commenced this action against the defendants for nonpayment of a debt. The plaintiff's amended complaint set out eight numbered paragraphs in which it alleged that, as assignee of a note executed

---

[1] In their brief, the defendants also claimed that the fact finder improperly determined that the legal fees claimed by counsel for the plaintiff were reasonable without first affording the defendants the opportunity to be heard on the reasonableness of the fees. The defendants abandoned that claim at oral argument before this court.

by the defendants, it was entitled to the principal and interest due under the note along with attorney's fees and costs incurred in bringing this action to enforce the note. In response to the plaintiff's complaint, the defendants filed an answer and two special defenses. They also filed counterclaims for setoff and recoupment. In their counterclaim for setoff, the defendants adopted, in their entirety, the eight paragraphs of the plaintiff's complaint and alleged those eight paragraphs as the first eight paragraphs of their own claim for setoff.

Pursuant to Practice Book § 23-53, the matter was referred to an fact finder, who conducted a hearing and submitted a written report containing factual findings and recommendations as to judgment in accordance with Practice Book § 23-56. The relevant facts contained in that report are as follows. On April 14, 1992, the defendants executed a $10,000 note made payable to Brookfield Bank (bank), which note was payable on demand.[2] As collateral for the note, the defendants gave the bank a security interest in certain shares of General Electric stock, which shares were held solely in the name of Myrna Grossman. Pursuant to the terms of the note, the defendants promised to pay interest on the $10,000 principal amount borrowed at an initial rate of 9 percent per annum until May 1, 1992, at which time interest was payable at a variable rate. They also promised to pay any attorney's fees and costs that the bank might incur in enforcing the note in the event of a default.

On or about May 8, 1992, the bank failed and the Federal Deposit Insurance Corporation (FDIC) took possession of the assets of the bank, including the

---

[2] The parties agree that the note is not a negotiable instrument pursuant to General Statutes § 42a-3-104 (a) and, therefore, the provisions of the Uniform Commercial Code, General Statutes §§ 42a-3-301 through 42a-3-307, do not apply in the present case.

defendants' note and the collateral that secured it. The defendants failed to make any principal or interest payments on the note. Consequently, on April 21, 1994, an account officer of the FDIC wrote a letter to the defendants, informing them that, as of that date, the total amount due and owing under the note was $11,673.42, of which $10,000 represented principal and $1673.42 represented interest. The letter also requested that Myrna Grossman sign and that the defendants forward blank stock powers to the FDIC, thereby enabling the FDIC to sell the stock and apply the proceeds of that sale to the defendants' outstanding debt. In response to that letter, David Grossman requested that the FDIC provide a detailed account of the certificate numbers and the number of shares represented by each certificate securing the note. On June 24, 1994, the FDIC provided the defendants with the applicable stock certificate numbers as well as the number of shares that each certificate represented, which totaled 123 shares, together with photocopies of the certificates. The FDIC again requested that Myrna Grossman sign the corresponding stock powers and that the defendants forward those documents to the FDIC. The defendants did not do so.

On June 26, 1996, the FDIC assigned the note, together with the collateral, to the plaintiff. On August 1, 1996, the plaintiff sent a certified letter to the defendants, demanding payment of the outstanding balance due on the note, which as of that date amounted to $14,409.33 in principal and interest. The defendants have never made any payments on the debt.

The fact finder found that as of March 20, 2000, the total amount owing to the plaintiff on the note was $18,100.20 and that the plaintiff was entitled to $6375 in reasonable attorney's fees, plus costs associated with the litigation. The fact finder further found that the defendants failed to meet the burden of proving their

special defenses and failed to present evidence that was sufficient to prove their counterclaims for setoff and recoupment. Accordingly, the fact finder recommended that the court render judgment for the plaintiff in the amount of $18,100.20 plus attorney's fees and costs. The fact finder also recommended that the court render judgment in favor of the plaintiff on the defendants' claims for setoff and recoupment.

Pursuant to Practice Book § 23-57, the defendants filed an objection to the court's acceptance of the fact finder's report, claiming, inter alia, that (1) the computer generated record that the plaintiff produced at trial was inadmissible hearsay and it was, therefore, improperly admitted as evidence of the debt, and (2) the fact finder improperly failed to find that the defendants had proved their claim for recoupment.

After reviewing the fact finder's findings of fact, the court concluded that the computer record adduced by the plaintiff as evidence of the defendants' debt was properly admitted under General Statutes § 52-180[3] as an exception to the rule against admitting hearsay evidence. Further, with regard to the defendants' recoupment claim, the court concluded that the defendants

---

[3] General Statutes § 52-180 provides in relevant part "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

provided no authority that supported their claim that they were entitled to a credit for the value of the stock that secured the note. The court also noted that it was the defendants' failure to sign and return the stock powers that hampered the FDIC's efforts to sell the stock and to apply the proceeds to the outstanding debt. Accordingly, it concluded that nothing in the record required findings or conclusions contrary to those made by the fact finder. The court, therefore, accepted the fact finder's findings and recommendations, and rendered judgment in favor of the plaintiff in the amount of $18,100.20, plus attorney's fees of $6375, plus costs. It also rendered judgment in favor of the plaintiff on the defendants' claim for recoupment. This appeal followed.

The defendants first claim that the court failed to find that the fact finder improperly allowed the plaintiff to introduce a computer printout record that had been created by the FDIC, rather than by the plaintiff itself, as evidence of the debt. We find it unnecessary to address that claim because the defendants made a binding judicial admission in their pleadings, namely, in their claim for setoff: "The principal sum of $10,000, plus accrued interest as of November 19, 1999 in the amount of $7,728.56, which interest continues to accrue, plus costs and attorneys' fees remains due and owing to Premier by the Grossmans." "Factual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . An admission in pleading dispenses with proof, and is equivalent to proof." (Citations omitted; internal quotation marks omitted.) *Ferreira* v. *Pringle*, 255 Conn. 330, 345, 766 A.2d 400 (2001).

Furthermore, during the proceeding before the fact finder, David Grossman admitted that he and his wife had executed the note and that neither of them had

ever made any payments on the note. Although those evidential admissions were not binding judicial admissions as to Myrna Grossman, she did not offer any testimony or other evidence to contradict David Grossman's evidential admissions. Accordingly, the fact finder was entitled to rely on the binding admission that the defendants made in their pleadings, along with the admissions of David Grossman, as proof of the debt, and it is, therefore, unnecessary for us to determine whether any other evidence of the debt that was proffered by the plaintiff at the proceeding before the fact finder was admitted properly.

The defendants next claim that the court improperly accepted the fact finder's recommendation that the defendants were not entitled to recoup the value of the stock that they had given to the bank as security for the note. Specifically, they claim that the fact finder's findings of fact with respect to their recoupment claim were inconsistent.

We begin our resolution of the defendants' claim by setting forth the applicable standard of review. Attorney fact finders are empowered to hear and decide issues of fact on contract actions pending in the Superior Court, subject to some exceptions, none of which are implicated here. See Practice Book § 23-53. On appeal, "[o]ur function . . . is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence

or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Twachtman* v. *Hastings*, 52 Conn. App. 661, 668, 727 A.2d 791, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999).

Initially, we note the paucity of Connecticut case law relevant to the issue before us. We believe that is a function of the fact that the note at issue here is not, whereas most notes are, a negotiable instrument under the provisions of the Uniform Commercial Code and, therefore, it is subject to defenses and claims in recoupment.[4] Accordingly, to reach our decision, we turn to the common-law concepts of pledge law.

We now turn to the defendants' claim. "Recoupment . . . refers to the defendant's right, in the same action, to cut down the plaintiff's demand, either because the plaintiff has not complied with some cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract. . . . The practice serves to avoid needless delay and unnecessary litigation." 20 Am. Jur. 2d 231, Counterclaim, Recoupment and Setoff § 5 (1995); see also *Genovese* v. *J. N. Clapp Co.*, 4 Conn. App. 443, 445–46, 495 A.2d 1079 (1985).

Where property has been pledged to secure a note, "[t]here is an implied agreement on the part of the pledgee for the safe-keeping of the pledge. He is under a duty to exercise ordinary or reasonable care in the preservation of the property pledged and in protecting the pledgor's rights therein. . . . [H]e cannot so deal with the pledged property as to destroy or even impair

---

[4] See article three of the Uniform Commercial Code, General Statutes § 42a-3-301 et seq. Specifically, we note that under General Statutes § 42a-3-305 (b), only a holder in due course is not subject to claims in recoupment arising out of the transaction with the original payee of the note.

its value." 72 C.J.S. 32, Pledges § 30 (1987). "A pledgee's . . . wrongful or unauthorized disposition of the pledged property so as to put it out of his power to redeliver it on payment of the debt it secures, constitutes a conversion although there is no wrongful intent or motive on the part of the pledgee." Id., pp. 35–36, § 33.

"As a general rule, the pledgor defendant is entitled to set off against the amount of the debt . . . any damage or loss resulting from the negligence, wrongful sale, or other wrongful conversion or act of the pledgee with respect to the collateral. Tender or payment of the amount due on the principal debt is not a condition precedent to the pledgor's right to set off the value of collateral converted by the pledgee or lost through his negligence." Id., p. 51, § 52.

In the present case, the defendants claim that the court improperly accepted the fact finder's report because the finding that they had failed to prove their counterclaim for recoupment was inconsistent with his other findings, namely that the note "was secured by a security interest in shares of General Electric stock" and "was assigned to plaintiff by the FDIC, together with the collateral securing the note." We agree.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Noble* v. *White,* 66 Conn. App. 54, 60, 783 A.2d 1145 (2001).

On the basis of our examination of all of the evidence, we are left with the definite and firm conviction that a

mistake has been committed with regard to the court's acceptance of the fact finder's finding that the defendants failed to prove their claim for recoupment and, consequently, were not entitled to a credit for the value of the stock that was pledged to secure the note that the plaintiff was enforcing.

The property that served as the pledge in the present case was the stock certificates representing 123 shares of General Electric stock. The record reveals that the plaintiff cannot redeliver those stock certificates to the defendants upon their tender or payment of the $18,100.20 judgment on the debt because the plaintiff's only witness, Nick Maimonis, general manager and vice president of the plaintiff organization, testified before the fact finder that the stock certificates had been lost or misplaced. We conclude that because the plaintiff, the assignee of the note, and the FDIC, the assignor, were charged with the duty to preserve the value of the collateral, which duty either the plaintiff or the FDIC breached by losing or misplacing the certificates, it was clearly erroneous for the court to adopt the finding that the defendants had failed to prove their claim for recoupment that they were entitled to a credit for the value of the stock.

The judgment is reversed insofar as it fails to allow the defendants a credit for the value of the stock and the case is remanded for further proceedings to determine the appropriate amount of the credit to be offset against the $18,100.20 judgment on the debt. In all other respects the judgment is affirmed.

In this opinion the other judges concurred.