[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding reached this court upon remand from the Appellate Court under the mandate: ". . . remanded for further proceedings to determine the appropriate amount of the credit to be offset against the $18,100.20 judgment on the debt."[1] The decision of the Appellate Court in its entirety may be found in 68 Conn. App. 51, and is incorporated by reference herein in its totality. It is appended hereto as the Court's Exhibit 1.2*
Subsequent to the determination of the merits of the case by the Appellate Court, certain other events have been brought to the attention of this court. Without doubt, the most significant of those suggested important occurrences is the miraculous discovery of the lost or misplaced certificates representing one hundred twenty-three (123) shares of General Electric stock which was pledged as security for this loan.
There have been three (3) stock splits since 1992. The first occurred on May 16, 1994, the second on May 12, 1996, and the third on May 8, 2000, which resulted in the numerical issuance of 2-for-1 shares, 2-for-1 shares, and 3-for-1 shares, respectively. The original one hundred twenty-three (123) shares of stock now number one thousand four hundred seventy-six (1476) shares, and the value has increased to thirty-eight thousand three hundred seventy-six ($38,376) dollars. The plaintiffs allege that the defendants have already received thirteen hundred fifty-three (1353) shares of stock with a value of thirty-five thousand one hundred seventy-eight ($35,178) dollars. The relevance of this proposition as well as the miraculous discovery of the certificates in issue leave much to be desired and do not impact on the court's decision herein.
In order to satisfy the Appellate Court's direction, certain replications of the findings in its decision are appropriate, if not necessary. It is not disputed that the promissory note in issue is not a negotiable instrument under the provisions of the Uniform Commercial Code CT Page 1646 and, therefore, is subject to applicable defenses including recoupment.
"Where property has been pledged to secure a note, [t]here is an implied agreement on the part of the pledgee for the safe-keeping of the pledge. He is under a duty to exercise ordinary or reasonable care in the preservation of the property pledged and in protecting the pledgor's rights therein . . . [H]e cannot so deal with the pledged property as to destroy or even impair its value. 72 C.J.S. 32, Pledges § 30 (1987). A pledgee's . . . wrongful or unauthorized disposition of the pledged property so as to put it out of his power to redeliver it on payment of the debt it secures, constitutes a conversion although there is no wrongful intent or motive on the part of the pledgee. Id., pp. 35-36, § 33."
"As a general rule, the pledgor defendant is entitled to set off against the amount of the debt . . . any damage or loss resulting from the negligence, wrongful sale, or other wrongful conversion or act of the pledgee with respect to the collateral. Tender or payment of the amount due on the principal debt is not a condition precedent to the pledgor's right to set off the value of collateral converted by the pledgee or lost through his negligence. Id., p. 51, § 52." (Internal quotation marks omitted.) Premier Capital, Inc. v. Grossman, 68 Conn. App. 51, 58-59
(2002).
The court noted on page 60 of its opinion that the property that served as a pledge was one hundred twenty-three (123) shares of General Electric stock. It found by virtue of the revelation on the record that the plaintiff cannot redeliver those stock certificates to the defendants upon their tender or payment of the eighteen thousand one hundred dollars and twenty cents ($18,100.20) judgment on the debt, because the plaintiff's only witness, one Nick Maimonis, the general manager and vice president of the plaintiff organization, testified before the factfinder that the stock certificates had been lost or misplaced. It concluded that because the plaintiff, as the assignee of the note, and the FDIC, the assignor, were charged with the duty to preserve the value of the collateral, which duty was breached by either the plaintiff or the FDIC by losing or misplacing the certificates. The defendants were found to have proven a claim for recoupment and were entitled to a credit for the value of the stock. The remand that followed, as previously recited, was for a determination of the amount of the credit to be offset against the eighteen thousand one hundred dollars and twenty cents ($18,100.20) judgment on the debt.
The plaintiff has urged the court to consider an adjustment for the stock splits that have previously been described and claims an CT Page 1647 entitlement to counsel fees, costs and expenses subsequent to the entry of the judgment by the court. Included within that entitlement are the defense of the appeal, the request for rehearing En Banc, a petitioner's certification, and the present hearing on the remand. The court has expressed where necessary its duty with respect to the remand. None of those claims require the court to revisit those issues under the Appellate Court's direction to it, much less to consider them in its decision. Its only concern is the value of the pledged instruments as of the date and the amount calculated as recoupment was established and determined.
Each of the parties argues for a different applicable date. It occurs to the court that listing what it perceives to be potential appropriate dates for such valuation is here appropriate.[3] With that thought in mind, we begin with those dates, commencing with the date the note was executed, April 14, 1992; May 8, 1992, the date of the failure at the bank, when the FDIC became the holder of the shares of stock; April 21, 1994, when the defendants were advised by the FDIC that the claimed amount due and owing under the note and the amount thereof with an allocation to principal and to interest, together with the request that the defendant Myra sign and that the defendants forward blank stock powers to the FDIC, thereby enabling the FDIC to sell the stock and apply the proceeds of that sale to the defendants' outstanding debt; June 24, 1994, the date the FDIC provided the defendants with the applicable stock certificate numbers as well as the number of shares that each certificate represented, which total one hundred twenty-three (123) shares, together with photocopies of the certificates; June 26, 1996, when the FDIC assigned the note and pledged General Electric stock to the plaintiff; August 1, 1996, when the plaintiff sent a certified letter demanding payment of the outstanding balance due on the note; October 25, 2002, when the court held a hearing on the remand.[4]
This court is convinced that the correct and appropriate date for a determination of the valuation of the one hundred twenty-three (123) shares of General Electric stock must be the date of an unequivocal demand for payment of the debt secured by the note and the pledged certificates. While other dates arguably may be asserted to be the date of demand, the content of such "demands" is not unequivocal as certain other acts set forth in those so-called demands fall short of a clear and unambiguous demand.
Therefore, this court determines that the correct date for determination of the appropriate amount of the credit to be offset against the $18,100.20 judgment is August 1, 1996 and the credit is found to be $10,255.13. Judgment may enter accordingly. CT Page 1648