[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff law firm (Traystman) brings this action to recover on a note in the amount of $26,873 to recover legal fees due from the defendant (Daigle) its former client.
The defendant filed an answer admitting that he had signed the promissory note but denying that he owed the amount claimed. The defendant also filed several special defenses, claiming among other things that the note was signed under duress, that the underlying basis for the note represents excessive and unreasonable fees and that the note is, therefore, null and void. The plaintiff denied the allegations of the special defenses. The defendant, while representing himself filed an offer of judgment of $15,000 which was refused by the plaintiff. The case was then claimed to the non-jury trial list. The trial took place before the undersigned on February 4 and February 6, 2003. After the trial the parties filed briefs.
In its brief, the plaintiff claims that $42,802.67 is now due, making its total bill $50,302, including the $7,500 already paid by the defendant as a retainer. The additional amounts in the brief are to cover interest under C.G.S. § 37-3a in the amount of $1,958.36, offer of judgment interest under C.G.S. § 52-192a in the amount of $2,862.34 and attorneys fees for the trial and preparation of its brief in the amount of $11,048.75.
 FACTS
The defendant retained the plaintiff law firm to represent him in his divorce case. He was a 34-year-old paperboard worker with two children ages 4 and 8. He was earning approximately $40,000 a year prior to an auto accident on November 12, 1999, which caused him to become disabled and unable to work from that date to the present. He owned a house valued at $143,000 with a mortgage of $92,000 giving him a net equity of $51,000. He also owned a Jeep with equity of $12,500 plus some money in CT Page 3160 various bank accounts and retirement plans for a total estate of $83,310. His total liabilities were $14,856.01 as filed on the financial affidavit in his divorce case. His total net worth at the time of the divorce was approximately $68,454. His wife had a minimal income. Daigle settled his injury case for $175,000.
Four witnesses testified at trial, Attorney Harry Traystman, Daigle, Attorney Gary Traystman, partners in the plaintiff law firm, and an associate, Scott McGowan.
Harry Traystman testified that the promissory note in the amount of $26,873 had not been paid. He also stated under cross examination that he did not know what salary was paid to the firm's associate, Scott McGowan, at the time he was handling Daigle's divorce case. The plaintiff then rested its case.
When defense counsel attempted to question the reasonableness of the legal fees, counsel for the plaintiff objected saying that it was strictly a suit on a note and the amount was irrelevant. The court overruled the objection and permitted evidence as to the reasonableness of counsel fees.
The defendant Daigle then testified that he had retained Attorney Gary Traystman to represent him in his divorce case. He signed a 3 1/2 page fee agreement with the firm agreeing to pay $250 an hour for the firm's services. He testified that it was his understanding that he would be represented by Gary Traystman personally. He also said that at his initial interview with Gary Traystman that the latter suggested that Daigle turn over to him his personal injury case. However, Daigle refused, stating that he was satisfied with his present law firm, that of Attorney Martin Rutchik.
After the initial consultation on April 26, 2001, Gary Traystman turned the file over to Scott McGowan after spending about 16 hours on it from April 26, 2001 until May 24, 2001, the last invoice attributed to services by Gary.
McGowan invoiced Daigle for 106 hours and billed him at the rate of $250 per hour for his services for a total of $21,200. Daigle claimed that he had expected Gary to represent him. At the time McGowan was a second-year associate earning $38,000 per year, which increased to $50,000 by the end of the year 2002. He was being paid between $18.27 an hour up to $24.04 an hour by the end of 2002, while he was billing Daigle in the amount of $250 an hour. Daigle claimed that he was unhappy with the representation by McGowan and the results obtained in his divorce CT Page 3161 case, but did not take his case away from the firm or file any complaints in writing.
During the two days of his divorce trial, Daigle said he was represented by McGowan. After the first day of the trial, April 10, 2002, Daigle said that McGowan told him he must sign a promissory note in the amount of $26,873, representing amounts presently owed to the firm or McGowan would withdraw from the case and he would have to get another lawyer or pursue it by himself. Daigle said he wanted Attorney Rutchik to look at this. McGowan said sign it and he will send him a copy. McGowan presented him with the promissory note dated April 10, 2002 at the top. Daigle testified that McGowan told him he must sign the note or he would have to proceed with this case on his own. Daigle said he had no choice but to sign the note. He felt he could not proceed with the case by himself. Above Daigle's signature were the words:
"Dated at Norwich this 12 day of April 2002."
Daigle claimed that he did not write in the date, that it was someone else's handwriting and that the date had been put in at some time after he signed the note. He stated that he did not sign the note on April 12, but signed it on April 10 after the first day of trial. It was his belief that McGowan wrote the date of April 12 at a later time so that it would not reflect that it had been signed on the first day of trial. "How could I find a new lawyer in the middle of trial?" said Daigle. On cross examination, Daigle was asked if he signed the note under duress. Daigle answered "yes."
The court was asked to take judicial notice of a motion by the firm to attach Daigle's house by way of a prejudgment remedy dated July 11, 2002 to secure the sum of $28,500 based upon the promissory note, and to garnish funds in the hands of Attorney Rutchik, which he was holding as a result of the settlement of Daigle's personal injury case. This court denied the attachment as to the house, but ordered Rutchik to hold in escrow sufficient funds to pay the note. This hearing was held on August 26, 2002, and on that date the court made its ruling.
At the end of the first day of trial, Daigle testified that he was pressed by McGowan to sign a form assigning the proceeds of his personal injury case over to the firm to pay his legal fee. This was in addition to the promissory note that Daigle signed.
Gary Traystman was called as a witness by the defendant. He claimed he did not know what salary was being paid to McGowan at the time of the Daigle divorce case. He acknowledged that he spent only 16 hours on CT Page 3162 Daigle's case out of a total of 122 hours that the firm charged Daigle at $250 per hour and that the remaining 106 hours were for work done by McGowan, also at the rate of $250 per hour. He claimed that the 3 1/2 page fee agreement retainer letter stating that his firm would charge $250 per hour did not state that any particular attorney would handle the file.
Gary Traystman also testified that the promissory note and assignment to pay the $26,873 over and above Daigle's original retainer of $7,500 was actually a clarification and a protection for Daigle, since the firm's fee agreement permitted bonus charges for exceptional results. A review of the retainer agreement fails to disclose any such statement.
The plaintiff firm refused to go to the Connecticut Bar Association Fee Dispute Committee as requested by Daigle.
Scott McGowan testified that he graduated from law school in May 1998 and joined the plaintiff's firm in October 1999. His salary was $38,000 to start and by the end of 2002, it had risen to $50,000. He was questioned as to the hours spent in court and the fees charged. He testified that he attended at least two pretrials on the case and charged $1,500 for each pretrial, six hours at $250 per hour. He also charged for several other court appearances where court transcripts show only brief appearances before the court of only 3 to 5 transcript pages, yet defendant was billed an hour or more for each of these appearances in addition to many other charges.
McGowan testified that he did have Daigle sign the promissory note on April 10, 2002 after the first day of trial. He said he did it to protect the firm's fee. He denied that he told Daigle he would withdraw from the case if he didn't sign the note. He claims he did not know how the date of April 12, 2002 appeared on the note. He did not recall who wrote down that date. He admits the handwriting of the date April 12 was his, but doesn't remember when he wrote in the date.
 DISCUSSION
The plaintiff claims that the action is a suit to collect on a promissory note and that, therefore, the court cannot inquire into the reasonableness of the fees. The court disagrees. The note was for "value received." The court has the right to inquire as to the value claimed.
Under C.G.S. § 49-7 regarding agreements concerning expenses and attorneys fees, any such agreement is valid but "shall be construed as an agreement for fair compensation rather than as a penalty and the court CT Page 3163 may determine amounts to be allowed for these expenses and attorneys fees even though the agreement may specify a larger sum."
The court finds that the overall charges of $26,873 claimed to be due after a payment of $7,500 is not reasonable for a basically straightforward divorce case involving a 34-year-old husband who was making $40,000 per year with total net assets of about $68,454, with two children ages 4 and 8. The wife's income was minimal. Such an overall charge seems excessive to this court based upon the amounts involved, non-complex issues (custody, visitation, alimony, support and division of real property) and the assets of the parties. The court must also consider the results obtained and the skill required for a proper result.
A lawyer's fee must be reasonable, whatever fee arrangement is made. P.B. § 1.5(a). Southport Manor Convalescent Center v. Kundrath, Docket No. CV-91-0284958, Judicial District of Fairfield, Vertefeuille, J. (1994).
The court also finds that it was unreasonable to charge $250 per hour for the services of an attorney only three years out of law school. It is evident to this court that the attorney spent many hours dealing with apparent problems where there were no really complicated issues. The case was basically simple and straightforward. Daigle had a house, a car and a small income from a rental property. At issue were support, alimony, custody, visitation and a division of the real property.
The decision of Superior Court Judge Scarpellino finds that the cause of the marital breakdown was the fault of the wife and divided the real property and custody rights equally. He also ordered the defendant to pay support and alimony.
It seems to this court that the same result could have been obtained with far less time and expenses if it were handled by a more experienced attorney. In the case of Mahoney, Geghan Roosa v. Baker,24 Conn.L.Rptr. 597 (Waterbury, 1999), plaintiff's attorney used other lawyers to handle part of the case. The court held that he should have charged the client only what he paid to the other lawyers. In this case, Traystman was paying McGowan less than $25 per hour, but charged Daigle $250 per hour for his services. The court does not find this to be reasonable.
Although the other lawyers used were not in the same firm in theMahoney case, it does establish the principle that the fee charged to the client should be proportionate to what the individual attorney is paid by CT Page 3164 his firm.
"The court may exercise its discretion in determining the amount of fees allowable since courts have a general knowledge of what would be a reasonable attorneys fee for services which are fairly stated and described." Kahn v. Arrindell, Docket No. CV-9500378302, Judicial District of New Haven (August 1997, Barnett, J.) citing Miller v.Kishner, 225 Conn. 185, 202 (1993).
In Kahn, the court found a fee of $22,300 was excessive for a marital dissolution where the client was a social worker earning $46,500 per year with 2 children and her husband was a school teacher earning $59,000 per annum. The court found a fee of $22,302 to be excessive. The plaintiff firm has the duty to prove the reasonableness of its fees by clear and convincing evidence. Andrews v. Gorby, 237 Conn. 12, 20 (1996).
The charges for court appearances and trial and that charged for preparation of ordinary motions were identical, $250 per hour. The amount charged for McGowan's services and that of Traystman were also the same, $250 per hour. Charging the same fee for preparation, motions and office work as for trial work and court hearings and for work by attorneys at vastly different skill and experience levels does not square with the Practice Book requirements which specify:
"The factors to be considered in determining the reasonableness of a fee include . . . the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly." Practice Book § 1.5(a) (1).
"The experience, reputation and ability of the lawyer or lawyers performing the services . . ." Practice Book § 1.5(a) (7).
McGowan's experience, reputation and ability were not in the same category as that of Traystman, a lawyer with twenty-two years experience to McGowan's three.
In this area, the highest fee charged is $250 per hour, and only by the most experienced attorneys.
"The fact that no distinction is ultimately made between the nature of work results in charging the same rate for obtaining simple motions as is charged for the analysis of financial documents. We do not think this result can be allowed. Nor do we find that the same hourly rate may be allowed for work performed by partners, associates and law clerks.Donnelly v. Donnelly, 80 Ill. App.3d 597, 603 (1980). CT Page 3165
The court is of the firm conviction that charging a fee of $34,313 was not reasonable in this case. The court has carefully considered the type of action, the amounts of money at stake, the relative simplicity of the issues, the results obtained and the fees usually charged in the area. It has also considered the skill necessary to obtain the proper result. In addition, the court does not find it reasonable to charge $250 per hour for a two-year associate even though the retainer agreement did not specify which lawyer would handle the case. Finally, the court finds that not all the fees charged for time spent in court were supported by the evidence. In short, the court finds that the plaintiff firm has failed to prove that its fees were reasonable.
The defendant filed a special defense of duress.
The court finds that the defendant signed the note and assignment under duress and, therefore, it is null and void.
"For a party to demonstrate duress, it must prove (1) a wrongful act or threat; (2) that left the victim no reasonable alternative and (3) to which the victim in fact acceded; and (4) the resulting transaction was unfair to the victim." Noble v. White, 66 Conn. App. 54, 59 (2001).
An agreement between an attorney and client that is signed at the courthouse and before an impending hearing is signed under duress.Noble, supra, 550.
The court finds that in the instant case all of the elements required to show duress were present, especially that the document was presented for signature for the first time in the courthouse where a hearing was scheduled and the attorney threatened to withdraw his appearance if the document was not signed immediately.
In this case as in Noble, no opportunity was given to the defendant to consult with another attorney. Contracts made by an attorney with an existing client are scrutinized by our courts with great care, and if there are any doubts they will be resolved in favor of the client.McKnight v. Gizze, 107 Conn. 229, 234 (1928).
The court finds the testimony of Daigle credible regarding his testimony about signing the note. The court does not find credible the testimony of McGowan as to the circumstances of signing the note or writing in the date of April 12 at a later time. The testimony of Gary Traystman that the note was for the benefit of Daigle is not credible. The court is firmly convinced that the purpose of having Daigle sign the CT Page 3166 note and the assignment was to guarantee payment to the firm and to prevent the court from examining whether or not the fee was reasonable.
The court, therefore, finds that the promissory note was signed under duress and is, therefore, null and void.
The plaintiff claims that the defendant should be barred from his defense of the case by the doctrine of equitable estoppel, laches and unclean hands. Such legal theories were not pleaded and were not raised at the trial. They are in the nature of defenses to an action, not to be used by the plaintiff as against the defendant in presenting his defense.
The complaint has only one count to recover on the promissory note. The court has declared the note to be null and void because it was signed under duress. Since there are no counts other than on the note, and the note is null and void, judgment must enter for the defendant.
D. Michael Hurley, JTR CT Page 3167